IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE
UNITED STATES, BORN FREE, USA,
HELP OUR WOLVES LIVE, and
FRIENDS OF ANIMALS AND THEIR
ENVIRONMENT,

      Plaintiffs,

      v.                                   13-CV-0186-BAH

KENNETH SALAZAR, SECRETARY
OF THE INTERIOR, UNITED STATES
DEPARTMENT OF THE INTERIOR,
and UNITED STATES FISH AND
WILDLIFE SERVICE,

      Defendants.

## ANSWER

      Defendants, State of Wisconsin and Wisconsin Department of Natural Resources,
file this answer to the above-captioned Complaint as follows:

<u>INTRODUCTION</u>

      1.    The allegations contained in Paragraph 1 constitute Plaintiff's
characterization of their case to which no further response is required.  To the extent a
response is required; Defendants deny the allegations in Paragraph 1.

      2.    Defendants deny the allegations contained in Paragraph 2 and assert that
conservative reductions in wolf populations in the Western Great Lakes State's (WGL),

Distinct Population Segment (DPS), does not affect the status of the gray wolf as a recovered species in the Western Great Lakes DPS nor does it place the continued existence of the wolf population in the Western Great Lakes DPS in jeopardy.

3.      Defendants deny the allegations contained in Paragraph 3 and assert that the harvest of wolves according to restrictive quotas, are not biologically reckless, but constitute management and control of a recovered species.  Snares are not allowed in Wisconsin.  Leg hold traps, which are more properly called foot hold traps, are also used to research and monitor the wolf population by biologists.

4.      The allegations contained in Paragraph 4 are conclusions of law to which no response is required.

5.      The allegations contained in Paragraph 5 are conclusions of law to which no response is required.

6.      The allegations contained in Paragraph 6 are conclusions of law to which no response is required.

7.      The allegations contained in Paragraph 7 are conclusions of law to which no response is required.

8.      Defendants deny the allegations contained in Paragraph 8.

9.      Defendants deny the allegations contained in Paragraph 9 and assert that criteria for delisting in the 1992 wolf recovery plan was just for the Western Great Lakes portion of known wolf range.  Genetic research has shown that the Western Great Lakes states wolf populations are gray wolves (Canus lupus) that have admixed with eastern

wolves (Canus lycaon), and this mix has existed since historical and possibly geological time.  In the Great Lakes region this genetic mix of wolves behaves as a single species and is well suited genetically for consideration as a DPS.

10.     The allegations contained in Paragraph 10 are conclusions of law to which no   response is required.

## JURISDICTION AND VENUE

11.     Defendants admit to the allegations in Paragraph 11.

12.     The allegations contained in Paragraph 12 are conclusions of law to which no response is required.

## Parties

13.     Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.     Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.     Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.     Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.     Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 17.

18.     Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.     The allegations in Paragraph 19 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of their content.  Any allegations contrary to their plain language and meaning are denied.

## LEGAL FRAMEWORK

### The Endangered Species Act

20.     The allegations in Paragraph 20 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of their content.  Any allegations contrary to their plain language and meaning are denied.

21.     The allegations in Paragraph 21 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

22.     The allegations in Paragraph 22 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

23.     The allegations in Paragraph 23 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

24.     The allegations in Paragraph 24 are conclusions of law as to which no response is required.

25.     The allegations in Paragraph 25 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

26.     The allegations in Paragraph 26 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

27.     The allegations in Paragraph 27 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

28.     The allegations in Paragraph 28 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide

the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

29.     The allegations in Paragraph 29 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

30.     The allegations in Paragraph 30 contain Plaintiff's characterization of the ESA and court decisions interpreting the ESA, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

<u>The Distinct Population Segment Policy</u>

31.     The allegations in Paragraph 31 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

32.     The allegations in Paragraph 32 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

33.     The allegations in Paragraph 33 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves

and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

34.     The allegations in Paragraph 34 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

35.     The allegations in Paragraph 35 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

36.     Defendants admit the allegations in Paragraph 36 and affirmatively assert that the Western Great Lakes DPS satisfies the criteria for physical, ecological, genetic and morphologic reasons.   WGL wolves are smaller and tend to be more tan and cinnamon in color than wolves of the Northern Rockies and are specialists for deer and beaver hunting within the Great Lakes hardwood/conifer transition.   The northern boundary of this DPS is a foreign border with Canada.   The DPS tool was intended to provide greater flexibility to the ESA and assist in overall conservation of the species, which would include delisting and returning management authority to the States and Tribes as is the intent of ESA.

37.     The allegations in Paragraph 37 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves

and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

38.    The allegations in Paragraph 38 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

39.    Defendants deny the allegations contained in Paragraph 39.

## The Administrative Procedure Act

40.    The allegations in Paragraph 40 contain Plaintiff's characterization of the Administrative Procedure Act, (APA) and court decisions interpreting the APA, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

41.    The allegations in Paragraph 41 contain Plaintiff's characterization of the Administrative Procedure Act, (APA) and court decisions interpreting the APA, which speak for themselves and provide the best evidence of its content.   Any allegations contrary to its plain language and meaning are denied.

## FACTUAL BACKGROUND

## Gray Wolf Biology

42.    Defendants admit the allegations in the first three sentences of Paragraph 42.  Defendants deny the remaining allegations in Paragraph 42 and assert that wolves readily kill and eat livestock including in Wisconsin and Michigan where deer are

more abundant.   Predation on livestock is more a matter of opportunity and learned behavior.  Given enough opportunities, wolves will eventually learn to prey on livestock. Wolves are ungulate specialists and many livestock species are ungulates.

43.     Defendants admit to the allegations in Paragraph 43.

44.     Defendants admit to the allegations in Paragraph 44.

45.     Defendants admit to the allegations in Paragraph 45.

46.     Defendants admit to the allegations in Paragraph 46.

47.     Defendants deny the allegations in Paragraph 47 and assert that dispersal is crucial in the early stages of wolf recovery and that there are few if any remaining areas of suitable habitat available for wolves to disperse to in the Western Great Lakes DPS.

48.     Defendants deny the allegations in Paragraph 48 and assert that dispersal is crucial to the early stages of wolf recovery and that there are few if any remaining areas of suitable habitat available for wolves to disperse to in the Western Great Lakes DPS.

49.     Defendants admit to the allegations in Paragraph 49.

50.     Defendants deny the allegations in Paragraph 50.   There are substantial areas in North America that were outside of the range of the gray wolves.  Mammologists consider wolves east of the Great Lakes as eastern woodland wolves (Canus lycaon) and south of that are considered red wolves, (Canus rubra).

<u>The Ecological Significance of the Gray Wolf</u>

51.     Defendants deny the allegations in Paragraph 51 and assert that complete protection is not vital for maintaining the ecological benefits of wolves.

52.     Defendants deny the allegations in Paragraph 52.  Large carnivores may not be as sensitive to human impacts as species further down the food chain in the ecosystem.

53.     Defendants deny the allegations Paragraph 53 and assert that most ecologists accept the importance of wolves and other large carnivores to natural ecosystems through morphic cascades, but few ecologists agree with the delicate balances in nature.  Relationships in nature tend to be very dynamic.

54.     Defendants admit to the allegations in Paragraph 54 that the presence of the wolf may benefit other species and the ecosystem they depend on.  Defendants deny the allegations to the extent plaintiffs allege that the gray wolf should not be de-listed because its presence benefits the ecosystem and other species.

55.     Defendants admit to the allegations in Paragraph 55 that the presence of the wolf may benefit other species and the ecosystem they depend on.  Defendants deny the allegations to the extent plaintiffs allege that the gray wolf should not be de-listed because its presence benefits the ecosystem and other species.

56.     Defendants admit to the allegations in Paragraph 56 that the presence of the wolf may benefit other species and the ecosystem they depend on.  Defendants deny the allegations to the extent plaintiffs allege that the gray wolf should not be de-listed because its presence benefits the ecosystem and other species.

57.     Defendants admit to the allegations in Paragraph 57.

## The Wolf Was Persecuted To The Brink Of Extinction

58.     Defendants deny the allegations in Paragraph 58 and assert that there are substantial areas in North America that were outside of the range of the gray wolves. Mammologists consider wolves east of the Great Lakes as eastern woodland wolves (Canus lycaon) and south of that are considered red wolves, (Canus rubra).

59.     Defendants deny the allegations in Paragraph 59 and assert that Wisconsin has not had a policy for elimination of all wolves.  In 1957, Wisconsin listed the wolf as a protected wild animal, the first State to provide any protection for wolves.  Wisconsin ended its bounty on wolves in 1957, and Michigan in 1960, to prevent wolf extinction in their States.

60.     Defendants admit to the allegations in Paragraph 60.

61.     Defendants deny the allegations in Paragraph 61 and assert that wolves were protected by Great Lakes states before the passage of the ESA.

62.     Defendants deny the characterization in Paragraph 62 that scientific confusion reigned over the nature of the wolf species prior to 1978.

63.     Defendants deny the characterization of the 1978 listing action in Paragraph 63 and assert that though the formal DPS policy was not yet adopted in 1978, USFWS essentially created and listed a Minnesota wolf DPS at the same time, listing a separate and distinct Minnesota population of gray wolves as threatened.  That action was not challenged in over 30 years.  The Minnesota wolf DPS has since spread to occupy most of

the northern portions of the western Great Lakes states, which is now more appropriately called the Western Great Lakes DPS.

64.     Defendants deny the allegations in Paragraph 64 and assert that ESA protection is intended to restore species to significant portions of range of the species known at the time of listing.  Total area of historical range is not known for most species and in the case of wolves; much of the historical range is no longer suitable.  About one third of the DPS in the Western Great Lakes DPS represents core wolf habitat and the remainder is a zone over which dispersing wolves occasionally roam.  Wolves occupy significant portions of the range in the WCL DPS.

65.     Defendants admit to the first sentence of Paragraph 65.  Defendants deny the remainder of Paragraph 65 and assert that Minnesota wolves have been listed as threatened instead of endangered since 1978, allowing killing of wolves that depredate on livestock and resulting in 20 to over 200 wolves killed annually.  Despite that reduced protection the wolf population continued to increase and spread across Minnesota as well as recolonizing northern Wisconsin and the Upper Peninsula of Michigan.  The wolf range in Minnesota has stabilized since the 1990's and is mostly saturated in Michigan. Range expansion in Michigan has slowed greatly in recent years suggesting that most areas of suitable range in the Western Great Lakes DPS are occupied.

66.     Defendants deny the allegations in Paragraph 66 and assert that wolves in the eastern U.S. are considered eastern woodland wolves and in southern U.S., red wolves.  Much of the area not occupied is no longer suitable for wolves.  In the Great

Lakes region wolves fully occupy over 30% of the DPS and most of the suitable habitat. It is unclear that any additional large areas of suitable habitat exist anywhere across the central U.S. where additional WGL wolves could settle.  Most areas that could potentially be settled by the WGL wolves are currently occupied.

<u>The FWS's Previous Attempts to Reduce Protection for Wolves</u>

67.    Defendants deny the allegations in Paragraph 67 and assert that USFWS has attempted to delist wolves in the WGL because wolves have recovered in the region and they were attempting to return management authority to States and Tribes after the species had recovered as was the intent of Congress.  Courts have mainly questioned USFWS policies and procedures, but have not questioned whether wolves have recovered in the WGL region.

68.    Defendants deny the allegations in Paragraph 68.

69.    The allegations in Paragraph 69 characterize court decisions which speak for themselves and provide the best evidence of their contents.  Any allegations contrary to their plain language and meaning are denied.

70.  The allegations in Paragraph 70 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves and provide the best evidence of their content.   Any allegations contrary to their plain language and meaning are denied.

71.    The allegations in Paragraph 71 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves

and provide the best evidence of their content.  Any allegations contrary to their plain language and meaning are denied.

72.    The allegations in Paragraph 72 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves and provide the best evidence of their content.  Any allegations contrary to their plain language and meaning are denied.

73.    Defendants deny the allegations in Paragraph 73 and assert that prior court decisions to reduce DPS areas to recovered populations was the guide used by USFWS for designating the Western Great Lakes DPS.  This DPS represents a true biological and ecological population that includes core habitat of the population and the dispersal zone which captures most of the population that disperses out of the core range.

74.    Defendants deny the allegations in Paragraph 74 and assert that this was not a wolf hunt, but a depredation control program using government trappers to euthanize problem wolves.  No hunt had been attempted in Wisconsin until 2012.

75.    The allegations in Paragraph 75 contain Plaintiff's characterization of the DPS policy and court decisions interpreting the DPS policy, which speak for themselves and provide the best evidence of their content.  Any allegations contrary to their plain language and meaning are denied.

76.    Defendants deny the allegations in Paragraph 76.  The boundaries of the Western Great Lakes DPS includes the area of core habitat and dispersal zone where most

wolves leaving the core area are likely to go and thus represents a biological and ecological population and is well suited as designation as a DPS.

77.    The allegations in Paragraph 77 contain Plaintiff's characterization of the Federal Register which speaks for itself and provides the best evidence of its content. Any allegations contrary to its plain language and meaning are denied.

78.    The allegations in Paragraph 78 characterize court decisions which speak for themselves and provide the best evidence of their contents.  Any allegations contrary to their plain language and meaning are denied.

79.    The allegations in Paragraph 79 characterize court decisions which speak for themselves and provide the best evidence of their contents.  Any allegations contrary to their plain language and meaning are denied.

80.    The allegations in Paragraph 80 contain Plaintiff's characterization of the Federal Register which speaks for itself and provides the best evidence of its content. Any allegations contrary to its plain language and meaning are denied.

81.    Defendants deny allegations in Paragraph 81 that the characterization of 2009 wolf delisting and speculation and that FWS skipped public comment because it was "undoubtely worried about the public comments it would get."

82.    Defendants admit to the allegations in the first sentence of Paragraph 82. Defendants deny the remaining allegations in Paragraph 82.

The 2011 Delisting Rule Challenged By This Action

83.     The allegations in Paragraph 83 contain Plaintiff's characterization of the Federal Register which speaks for itself and provides the best evidence of its content. Any allegations contrary to its plain language and meaning are denied.

84.     The allegations in Paragraph 84 contain Plaintiff's characterization of the Federal Register which speaks for itself and provides the best evidence of its content. Any allegations contrary to its plain language and meaning are denied.

85.     The allegations in Paragraph 85 contain Plaintiff's characterization of the Federal Register which speaks for itself and provides the best evidence of its content. Any allegations contrary to its plain language and meaning are denied.

86.     Defendants deny the allegations in Paragraph 86 and assert "It is clear that the existing wolves in the WGL are the descendants of the wolves that were listed in 1978; the wolves that were the subject of the recovery plans; the wolves that have met recovery goals; and the wolves that will be managed by State, Tribes and other Federal agencies after delisting." 76 Fed. Reg. at 81680.  Scientists agree that wolves in the WGL region behave as a single species. They represent a DPS of wolves that have recovered.

87.     The allegations in Paragraph 87 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

88.     The allegations in Paragraph 88 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

89.     The allegations in Paragraph 89 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

90.     The allegations in Paragraph 90 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

91.     The allegations in Paragraph 91 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

92.     The allegations in Paragraph 92 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

93.     The allegations in Paragraph 93 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

94.     The allegations in Paragraph 94 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

95.     The allegations in Paragraph 95 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

96.     The allegations in Paragraph 96 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

97.     The allegations in Paragraph 97 contain Plaintiff's characterization of the Federal Register, DPS Policy and court decisions interpreting DPS policy, which speaks for itself and provides the best evidence of its content.  Any allegations contrary to its plain language and meaning are denied.

98.     Defendants deny the allegations in Paragraph 98 and assert that there are substantial areas in North America that were outside of the range of the gray wolves. Mammologists consider wolves east of the Great Lakes as eastern woodland wolves (Canus lycaon) and south of that are considered red wolves, (Canus rubra).

99.     Defendants deny the allegations in Paragraph 99 and assert that dispersal is needed for the early stages of wolf recovery, however, wolf populations in the Western Great Lakes DPS are fully recovered.  There are few if any remaining areas of suitable habitat available for dispersal.

100.    The allegations in Paragraph 100 contain Plaintiff's characterization of the Federal Register which speaks for itself and provides the best evidence of its content. Any allegations contrary to its plain language and meaning are denied.

101.    Defendants deny the allegations in Paragraph 101 and assert that federal ESA funding for wolf monitoring has not occurred since 2003 regardless of federal listing status.  Funding for wolf management and monitoring in Wisconsin has primarily come from state wildlife management funds provided as part of federal Pittman Robertson funds, which are not linked to the listing status of wolves.  Re-listing wolves would result in a loss of revenue for applications for wolf licenses and sales of wolf licenses that are earmarked for wolf management and monitoring and paying depredation payments.  Re-listing wolves as endangered will result in less money available for wolf monitoring since more of that money would be used for wolf depredation payments and wolf depredation controls.

102.    Defendants deny the allegations in Paragraph 102 and assert that dispersal is needed for the early stages of wolf recovery; however, wolf populations in the Western Great Lakes DPS are fully recovered.  There are few if any remaining areas of suitable habitat available for dispersal.

103.    Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 103 pertaining to Minnesota.

104.    Defendants deny the allegations in Paragraph 104 and assert that Wisconsin's wolf season quota was not set at roughly 24% of the estimated wolf population in Wisconsin.  It was a much smaller percentage of the fall population. Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations pertaining to Michigan.

105.    Defendants deny the allegations in Paragraph 105 and assert that the wolf management plans would not jeopardize the WGL population of wolves.

106.    Defendants deny the allegations in Paragraph 106 and assert that the wolf harvest in Minnesota and Wisconsin is highly regulated and will place the wolf population in the WGL at risk.

107.    Defendants deny the allegations in Paragraph 107 and assert that the permits given to private landowners provide reasonable regulated authority for landowners to protect their private property.  The authority only exists for private lands with requirements that conservation wardens be contacted within 24 hours.  Such permits are

restricted and regulated.  There were 130 permits issued in 2012, which resulted in a total of 16 wolves being shot to protect privately owned livestock.

108.    Defendants deny the allegations in Paragraph 108.

109.    Defendants deny the allegations in Paragraph 109 and assert that wolf populations have increased greatly in the last 10 years with federal protection as a listed endangered species, despite vehicle accidents and illegal killings.

110.    Defendants deny the allegations in Paragraph 110.  Minnesota has been able to implement lethal livestock depredation control, as wolves were listed there as threatened, yet the wolf population in Minnesota has continued to increase.  Wisconsin and Michigan had not been able to implement legal control of depredating wolves until after the 2011 wolf de-listing rule.

111.    Defendants deny the allegations in Paragraph 111 and assert that funds for wolf management will decline with relisting of wolves as endangered, as there will be greater costs for depredation management and depreation payments, and loss of revenue generated by applications for and sales of wolf licenses.

112.    Defendants deny the allegations in Paragraph 112.  "It is clear that the existing wolves in the WGL are the descendants of the wolves that were listed in 1978; the wolves that were the subject of the recovery plans; the wolves that have met recovery goals; and the wolves that will be managed by State, Tribes and other Federal agencies after delisting."  76 Fed. Reg. at 81680.

CLAIMS FOR RELIEF
COUNT I

113.   Defendants incorporate by reference each and every response to the prior allegations in this complaint.

114 – 118.   The allegations contained in Paragraphs 114 – 118 are conclusions of law to which no response is required.  To the extent that a response is deemed required, the allegations in Paragraphs 114 – 118 are denied.

119.   Defendants deny the allegations in Paragraph 119 and assert that the delisting of the Western Great Lakes DPS does not sever crucial dispersal corridors.  The Western Great Lakes DPS represents a distinct and separate ecological population of gray wolves including their dispersal area.   Most of the areas that could be occupied by Western Great Lakes wolves are already occupied.

120.   The allegations in Paragraph 120 are conclusions of law to which no response is required.

COUNT II

121.   Defendants incorporate by reference each and every response to the prior allegations in this complaint.

121 - 126.   The allegations contained in Paragraphs 121-126 are conclusions of law to which no response is required.  To the extent that a response is deemed required, the allegations in Paragraphs 121-126 are denied.

## COUNT III

127.    Defendants incorporate by reference each and every response to the prior allegations in this complaint.

128.    The allegations contained in Paragraphs 128 are conclusions of law to which no response is required.  To the extent that a response is deemed required, the allegations in Paragraphs 128 are denied.

129.    Defendants deny the allegations in Paragraph 129 and assert "It is clear that the existing wolves in the WGL are the descendants of the wolves that were listed in 1978; the wolves that were the subject of the recovery plans; the wolves that have met recovery goals; and the wolves that will be managed by State, Tribes and other Federal agencies after delisting."   76 Fed. Reg. at 81,680.   Scientists agree that wolves in the WGL region behave as a single species. They represent a DPS of wolves that have recovered.

130.    The allegations in Paragraph 130 are conclusions of law to which no response is required.

## RELIEF REQUESTED

The remaining allegations in the Complaint constitute Plaintiff's request for relief to which no further response is required.  Defendants deny that Plaintiffs are entitled to any relief whatsoever.   Any of Plaintiff's allegations not admitted in the preceding paragraphs are hereby denied.

Dated this 22nd day of April, 2013.

J.B. VAN HOLLEN
Attorney General


**/s/ Thomas J. Dawson**
THOMAS J. DAWSON
Assistant Attorney General
State Bar #1016134


**/s/ Cynthia R. Hirsch**
CYNTHIA R. HIRSCH
Assistant Attorney General
State Bar #1012870

Attorneys for Intervenor-Applicants
State of Wisconsin and
Wisconsin Department of Natural Resources

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8987 (Dawson)
(608) 266-3861 (Hirsch)
(608) 266-2250 (Fax)
hirschcr@doj.state.wi.us
dawsontj@doj.state.wi.us