IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY<br>OF THE UNITED STATES<br>and BORN FREE, USA and<br>HELP OUR WOLVES LIVE ("HOWL")<br>and FRIENDS OF ANIMALS AND<br>THEIR ENVIRONMENT ("FATE"),<br><br>    Plaintiffs<br><br>v<br><br>KENNETH SALAZAR,<br>SECRETARY OF THE INTERIOR and<br>UNITED STATES DEPARTMENT OF<br>THE INTERIOR and UNITED STATES<br>FISH AND WILDLIFE SERVICE,<br><br>    Defendants<br><br>and<br><br>STATE OF MICHIGAN<br>530 West Allegan Street<br>Lansing, MI 48915<br><br>and<br><br>MICHIGAN DEPARTMENT<br>OF NATURAL RESOURCES<br>530 West Allegan Street<br>Lansing, MI 48915,<br><br>    Defendant Intervenor Applicants. | Civil Action No. 1:13-cv-00186-BAH<br><br>**UNOPPOSED MOTION OF THE STATE OF MICHIGAN AND THE MICHIGAN DEPARTMENT OF NATURAL RESOURCES TO INTERVENE AS DEFENDANTS** |

**UNOPPOSED MOTION OF THE STATE OF MICHIGAN AND
THE MICHIGAN DEPARTMENT OF NATURAL RESOURCES
TO INTERVENE AS DEFENDANTS**

The State of Michigan ("State") and the Michigan Department of Natural Resources ("MDNR"), through their attorneys, Bill Schuette, Attorney General for the State of Michigan, and Pamela J. Stevenson and Stephen D. Thill, Assistant Attorneys General, move pursuant to Federal Rule of Civil Procedure 24 to intervene as defendants in this action.

In this lawsuit, Plaintiffs, the Humane Society of the United States *et al.*, seek to invalidate a final rule that was issued by the United States Fish and Wildlife Service ("FWS") on December 28, 2011. That rule ("2011 Final Rule") removed the gray wolves of the Western Great Lakes Distinct Population Segment ("WGL DPS") from the list of endangered species for purposes of the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* ("ESA"). In so doing, the 2011 Final Rule returned to the several affected States the responsibility of managing the Western Great Lakes region's gray wolf population. As defined by FWS, the Western Great Lakes region includes the State of Michigan.

By State statutory mandate, MDNR is the governmental agency that is responsible for managing wildlife in the State of Michigan. *E.g.*, Mich. Comp. Laws § 324.40107. Thus, both the State of Michigan and MDNR have strong interests in the subject of this litigation. If Plaintiffs are successful in invalidating the 2011 Final Rule, the State of Michigan will be deprived of its sovereign authority to manage its wolf population consistent with established, appropriate wildlife

management principles.  Moreover, the current Defendants in this matter cannot adequately represent the interests of the State of Michigan and MDNR.  As the entities that have been primarily responsible for managing Michigan's wolf population, both before and after implementation of the 2011 Final Rule, the State of Michigan and MDNR are the only parties that can fully articulate and defend their ability to continue managing Michigan wolves following their removal from the endangered species list.

Pursuant to LCvR 7(m), counsel for the State of Michigan and MDNR has contacted counsel for both Plaintiffs and Defendants regarding their position on this motion.  Plaintiffs' counsel has informed counsel for the State of Michigan and MDNR that Plaintiffs take no position on this Motion to Intervene as Defendants.  Likewise, Defendants' counsel has informed counsel for the State of Michigan and MDNR that Defendants take no position on the motion.

management principles.  Moreover, the current Defendants in this matter cannot adequately represent the interests of the State of Michigan and MDNR.  As the entities that have been primarily responsible for managing Michigan's wolf population, both before and after implementation of the 2011 Final Rule, the State of Michigan and MDNR are the only parties that can fully articulate and defend their ability to continue managing Michigan wolves following their removal from the endangered species list.

Pursuant to LCvR 7(m), counsel for the State of Michigan and MDNR has contacted counsel for both Plaintiffs and Defendants regarding their position on this motion.  Plaintiffs' counsel has informed counsel for the State of Michigan and MDNR that Plaintiffs take no position on this Motion to Intervene as Defendants.  Likewise, Defendants' counsel has informed counsel for the State of Michigan and MDNR that Defendants take no position on the motion.

In accordance with Federal Rule of Civil Procedure 24(c) and LCvR 7(j), the State of Michigan and MDNR's proposed Answer to Plaintiffs' Complaint is attached hereto as Exhibit 1. In accordance with LCvR 7(c), the State of Michigan and MDNR's proposed Order granting the instant motion is attached hereto as Exhibit 2.

                Respectfully submitted,

                Bill Schuette
                Attorney General

                /s/ Pamela J. Stevenson
                Pamela J. Stevenson
                (Mich. Bar No. P40373)
                stevensonp@michigan.gov
                Stephen D. Thill
                (Mich. Bar No. P75808)
                thills@michigan.gov
                Assistant Attorneys General
                Attorneys for State of Michigan and
                Michigan Department of Natural
                Resources
                Environment, Natural Resources, and
                Agriculture Division
                P.O. Box 30755
                Lansing, MI 48909
                (517) 373-7540

Dated: April 22, 2013

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION OF THE STATE OF MICHIGAN AND THE MICHIGAN DEPARTMENT OF NATURAL RESOURCES TO INTERVENE AS DEFENDANTS**

The gray wolf population of the Western Great Lakes region long ago exceeded Federal recovery goals that were first established in 1978 and later reaffirmed in 1992.  Since 1976, the Minnesota gray wolf population has nearly tripled its numbers (from approximately 1,000 to approximately 3,000 wolves), and its range has more than doubled.  Because of this abundance and distribution, as well as effective management at the state level, the continued survival of the Minnesota gray wolf population is ensured.  *See* 76 Fed. Reg. 81666, 81677 (Dec. 28, 2011).  The two-State wolf population of Michigan and Wisconsin (excluding wolves in Michigan's Isle Royale National Park) has exceeded 100 wolves since late-winter 1993-94 and has exceeded 200 wolves since late-winter 1995-96.  This combined wolf population in Michigan and Wisconsin has exceeded even the most conservative Federal recovery criterion since 2001.  *Id.* at 81679.  Moreover, the gray wolf population of Michigan alone has exceeded the most conservative Federal recovery criterion since 2005.  *Id.* at 81676.  In short, for a number of years, designation of the Western Great Lakes region's gray wolf population as an "endangered species" has been neither necessary nor appropriate under the standards of the ESA.

Plaintiffs in this action seek declaratory and injunctive relief overturning FWS's decision to remove the wolves of the WGL DPS from the List of Endangered and Threatened Wildlife, 50 C.F.R. § 17.11.  Plaintiffs apparently wish to see all

5

populations of gray wolves remain on the endangered species list in perpetuity, and would therefore have this Court substitute its judgment for that of FWS regarding the recovery status of the WGL DPS.

The relief that Plaintiffs seek in this litigation would interfere with MDNR's ability to carry out sound management practices with respect to wildlife in the State of Michigan. Plaintiffs' requested relief would also undermine the Federal-State cooperation that is explicitly mandated by the ESA. 16 U.S.C. § 1535. As the entities responsible for managing wildlife in Michigan, the State and MDNR seek to intervene in this action as defendants in support of current Defendants Kenneth Salazar *et al.* ("Defendants").

## STATEMENT OF FACTS

In 1974, FWS listed the gray wolf as "endangered" throughout most of the conterminous United States. As a result of long-term cooperation between FWS and the States of Michigan, Wisconsin, and Minnesota, the wolf populations of the Western Great Lakes region have increased dramatically in size and range.

On May 5, 2011, FWS issued a proposed rule to remove the WGL DPS of gray wolves from the endangered species list. 76 Fed. Reg. 26806 (May 5, 2011). That proposed rule followed FWS's receipt of petitions from, *inter alia*, the Minnesota Department of Natural Resources and the Wisconsin Department of Natural Resources, requesting that the gray wolf populations in those States be removed from the endangered species list. FWS solicited public comments on its proposed

6

rule and received and considered more than 800 unique comments.  FWS also subjected the proposed rule to peer review.

On December 28, 2011, FWS issued a final rule delisting the wolves of the WGL DPS.  76 Fed. Reg. 81666 (Dec. 28, 2011) ("2011 Final Rule").  The 2011 Final Rule went into effect on January 27, 2012.  By removing the wolves of the WGL DPS from the endangered species list, FWS restored management authority over gray wolves to the individual States within the DPS.

## CURRENT STATUS OF THIS LITIGATION

Plaintiffs filed their Complaint on February 12, 2013.  Defendants have not yet filed an Answer or any other response to Plaintiffs' Complaint.  To the State of Michigan and MDNR's knowledge, no substantive pleadings or motions have been filed between the filing of Plaintiffs' Complaint and the filing of this Motion to Intervene as Defendants.

## ARGUMENT

I.  **The State of Michigan and MDNR are entitled to intervene of right under Federal Rule of Civil Procedure 24(a)(2).**

The State of Michigan and MDNR are entitled to intervene of right in this litigation because their interests would be injured by the relief that Plaintiffs seek, and because those interests cannot be adequately represented by the existing parties to this case. Federal Rule of Civil Procedure 24(a)(2), which governs intervention of right, states:

> On timely motion, the court *must permit* anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added).

The Court of Appeals for the D.C. Circuit has stated that qualification for intervention of right depends on four factors:

> (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) (internal quotation marks and citations omitted). The D.C. Circuit has also held that a party seeking intervention of right under Rule 24(a)(2) must demonstrate that it has standing under Article III of the Constitution. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003). The State of Michigan and MDNR satisfy each of the five prerequisites to intervention of right.

### A.     The State of Michigan and MDNR's motion is timely.

The State of Michigan and MDNR have promptly moved to intervene in this litigation. Defendants have not yet responded to Plaintiffs' Complaint, and this Court has not yet entered a case management order. Perhaps most importantly, if this Court grants the instant motion, no prejudice will come to any party. *See NAACP v. New York*, 413 U.S. 345, 365-69 (1973).

8

In *Fund for Animals, Inc. v. Norton*, the D.C. Circuit deemed a motion to intervene to be timely, noting that the motion had been filed before the defendants filed their responsive pleading. 322 F.3d at 735. Like the motion at issue in *Fund for Animals, Inc.*, the State of Michigan and MDNR's Motion to Intervene as Defendants meets the timeliness requirement of Rule 24(a)(2).

### B.     The State of Michigan and MDNR have substantial interests in the subject matter of this suit.

In order to intervene of right, a party must establish an interest in the subject matter of the suit. *E.g.*, *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981). According to the D.C. Circuit, the "interest" test is one of efficiency rather than exclusivity. "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

It is indisputable that the State of Michigan and MDNR have substantial interests in the subject matter of this action. Indeed, the fact that the word "Michigan" appears thirteen times in Plaintiffs' Complaint demonstrates that the State of Michigan and MDNR are inextricably bound to many of the issues presented in this lawsuit.

As noted, MDNR is the State agency with primary responsibility and statutory authority for the management of resident wildlife in the State of Michigan, including Michigan's wolf population. On behalf of the State of Michigan, MDNR has developed and implemented wolf management plans in order to

maintain a viable Michigan wolf population above a level that would warrant its classification as threatened or endangered.  *E.g.*, *Michigan Wolf Management Plan* at 9 (July 10, 2008), *available at* http://www.michigan.gov/documents/dnr/Draft_Wolf_Management_Plan_030708_227742_7.pdf.  (*See also* Declaration of Patrick E. Lederle, attached hereto as Exhibit 3.)  In addition, MDNR engages in continuing efforts to facilitate wolf-related benefits, minimize wolf-related conflicts, and conduct science-based wolf management using socially acceptable methods.  *E.g.*, *id.*

The State of Michigan and MDNR recognize that, since wolves have become re-established in Michigan, they have once again become an integral part of the natural resources of the State and have improved the natural functioning of Michigan ecosystems.  *E.g.*, *id.* at 23.  In the context of MDNR's mission and its implicit public trust responsibilities for the State of Michigan's wildlife, natural communities, and ecosystems, MDNR views the maintenance of a viable wolf population as an appropriate and necessary goal.  *E.g.*, *id.*  (*See also* Exhibit 3.)  The State of Michigan and MDNR also recognize that the gray wolf's survival as a species depends in part on its interaction with humans and on humans' ability and willingness to peacefully coexist with wolves.  *E.g.*, *id.* at 42-61.

The State of Michigan and MDNR have expended, and continue to expend, significant State resources in connection with wolf management.  First, MDNR developed the *Michigan Wolf Management Plan* through a lengthy and measured process that included intra- and inter-agency scoping, public meetings and

comment, focus-group meetings, public-attitude surveys, and thorough review of relevant science. *E.g.*, *id.* at 10-14. (*See also* Exhibit 3.) Since developing that management plan, MDNR has implemented it by, for example, taking action to increase public awareness and understanding of wolves and wolf-related issues; maintaining active research and monitoring programs; enacting and enforcing regulations necessary to maintain a viable wolf population; maintaining wolf habitat and sustainable populations of wolf prey; monitoring and managing adverse effects of diseases and parasites that affect wolves; and managing wolf depredation of domestic animals. *E.g.*, *id.* at 27-61. (*See also* Exhibit 3.)

In short, the State of Michigan and MDNR have substantial interests in local management of the Michigan gray wolf population, and their participation as parties to this lawsuit will foster efficiency and due process.

C. **Plaintiffs' proposed relief will impair the interests of the State of Michigan and MDNR.**

If Plaintiffs succeed in this litigation, the State of Michigan and MDNR will lose significant aspects of their management authority over the State's wolf population. Regulatory restrictions associated with the potential relisting of the WGL DPS would complicate and impede efforts to address the needs of Michigan's wolf population and of Michigan residents who experience wolf-related conflicts. For instance, the State of Michigan and MDNR would be deprived of the ability to limit, where necessary, wolf predation on game species, and to authorize the take of wolves engaged in depredations of domestic animals. If Michigan residents lose

11

confidence in MDNR's ability to manage and control wolf interactions and problems, public interest in wolf conservation will diminish, and the State of Michigan's wolf population will suffer as a result. Under Rule 24(a)(2), the State of Michigan and MDNR are entitled to defend against this threat by participating as parties to this litigation.

### D. The current parties cannot adequately represent the State of Michigan and MDNR's interests.

To satisfy the "inadequate representation" standard for intervention of right, an intervenor applicant need only show that the existing representation "may be" inadequate, and the applicant's burden in making that showing is "minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). "[A] shared general agreement . . . does not necessarily ensure agreement in all particular respects . . . ." *NRDC v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977). "The tactical similarity of the . . . legal contentions of [an existing party] and [an intervenor applicant] does not assure adequacy of representation or necessarily preclude the [intervenor applicant] from the opportunity to appear in [its] own behalf." *Nuesse*, 385 F.2d at 703.

More specifically, when an intervenor applicant's interest in an administrative regulation coincides to some degree with the interest of the agency responsible for that regulation, that coincidence does not necessarily ensure that the agency will provide adequate representation for purposes of Rule 24(a)(2). *Costle*, 561 F.2d at 912; *see also American Horse Protection Ass'n v. Veneman*, 200

F.R.D. 153, 159 (D.D.C. 2001) ("[M]erely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified.").

Although the current Defendants intend to defend against Plaintiffs' challenges, their interests in the subject matter of this litigation are not the same as the interests of the State of Michigan and MDNR. First of all, as Federal agencies, the United States Department of the Interior and FWS are obligated to a larger constituency than are the State of Michigan and MDNR. More importantly, it is the State of Michigan and MDNR, not the Interior Department or FWS, that have borne and continue to bear primary responsibility for wolf management in Michigan. (Exhibit 3.) For example, even when Michigan's wolves were still included on the endangered species list, the State of Michigan's expenditures on Michigan wolf management were far greater than similar Federal expenditures. (*Id.*) Moreover, State regulatory enforcement actions related to wolves outnumbered similar Federal enforcement actions by a ratio of approximately 6-to-1. (*Id.*) Simply put, the State of Michigan and MDNR have greater financial responsibility and on-the-ground experience in managing Michigan's gray wolf population than the Department of the Interior or FWS. (*Id.*) Thus, the State of Michigan and MDNR are in the best position to defend the adequacy of the State's wolf-related regulatory mechanisms.

### E. The State of Michigan and MDNR satisfy the requirements for Article III standing.

The D.C. Circuit has held that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). Thus, for the same reasons that the State of Michigan and MDNR are entitled to intervene of right under Rule 24(a), the State of Michigan and MDNR also satisfy the standing prerequisite to intervention as defendants in this action.

To establish constitutional standing, a party must satisfy three requirements: injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). If the 2011 Final Rule were invalidated, the State of Michigan and MDNR would suffer both direct and indirect injuries. The State of Michigan and MDNR immediately would lose significant management authority over the State's wolf population. As discussed above, that loss of management authority could cause diminished public interest in wolf conservation, and Michigan's wolf population could suffer as a result. This would constitute further cognizable injury to the State of Michigan and MDNR, which are committed to public awareness and understanding of wolves as a means of maintaining a viable Michigan wolf population. These would constitute concrete, particularized, actual injuries to the State of Michigan and MDNR. *See id.* at 560.

The causation and redressability prongs of the standing inquiry are also easily satisfied with respect to the State of Michigan and MDNR. Pursuant to the 2011 Final Rule, the WGL DPS is currently not included on the endangered species

14

list, meaning MDNR has full management authority over the State of Michigan's gray wolf population. Plaintiffs' proposed relief would cause injury to the State of Michigan and MDNR by stripping them of much of that authority. Conversely, if Plaintiffs' proposed relief is rejected, the potential injury to the State of Michigan and MDNR will be prevented. Thus, the State of Michigan and MDNR have standing to defend this lawsuit.

## II. Alternatively, the State of Michigan and MDNR should be allowed permissive intervention under Rule 24(b)(2).[1]

If this Court does not grant leave for the State of Michigan and MDNR to intervene of right, the State of Michigan and MDNR alternatively seek permissive intervention under Federal Rule of Civil Procedure 24(b)(2), which provides:

> On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
>
> (A) a statute or executive order administered by the officer or agency; or
>
> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

Plaintiffs' Complaint repeatedly alleges that the existing regulatory mechanisms for wolf management in the Western Great Lakes region are inadequate to support the delisting of the WGL DPS. (*E.g.*, Complaint (Doc. 1) ¶ 2.) Conversely, FWS relied in part on the adequacy of State-level management plans to

---

[1] When, as here, intervention of right is appropriate, permissive intervention is not intended as a substitute for intervention of right. If a party qualifies for intervention of right under Rule 24(a), the Court "must" permit intervention on that basis. Fed. R. Civ. P. 24(a).

justify the 2011 Final Rule. 76 Fed. Reg. at 81701-17. These claims are based in part on Michigan statutes that are administered on behalf of the State of Michigan by MDNR, as well as regulations issued under those statutes. Thus, permissive intervention by the State of Michigan and MDNR is appropriate under Rule 24(b)(2).

Under Rule 24(b)(3), in deciding whether to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As noted, Defendants have not yet filed an Answer or any other responsive pleading, and no case management schedule has been established in this matter. Permissive intervention by the State of Michigan and MDNR would not cause any undue delay or prejudice. If intervention of right is not granted, permissive intervention by the State of Michigan and MDNR should be allowed.

### III. As a last resort, the State of Michigan and MDNR should be allowed to participate in this matter as *amici curiae*.

Under Rule 24(a)(2), the State of Michigan and MDNR are entitled to intervention of right as parties in this matter. Even if that were not true, the State of Michigan and MDNR should be allowed to intervene, as a matter of this Court's discretion, under Rule 24(b)(2). In the event this Court does not allow the State of Michigan and MDNR to intervene under Rule 24, the State of Michigan and MDNR would request that the Court allow them to participate in this matter as *amici curiae*.

16

**CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, the State of Michigan and MDNR should be granted intervention of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, this Court should allow the State of Michigan and MDNR permissive intervention under Rule 24(b)(2). As a last resort, the State of Michigan and MDNR should be allowed to participate in this matter as *amici curiae*.

WHEREFORE, the State of Michigan and the Michigan Department of Natural Resources respectfully request that this Court grant their Motion to Intervene as Defendants.

> Respectfully submitted,
>
> Bill Schuette
> Attorney General
>
> /s/ Pamela J. Stevenson
> Pamela J. Stevenson
> (Mich. Bar No. P40373)
> stevensonp@michigan.gov
> Stephen D. Thill
> (Mich. Bar No. P75808)
> thills@michigan.gov
> Assistant Attorneys General
> Attorneys for State of Michigan and
> Michigan Department of Natural
> Resources
> Environment, Natural Resources, and
> Agriculture Division
> P.O. Box 30755
> Lansing, MI 48909
> (517) 373-7540

Dated: April 22, 2013

LF/Humane Society v US Fish and Wildlife/2013-0032710-B/Motion – MDNR's Motion to Intervene as Defendant – 2013 – 04-22