IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

The Humane Society of the United States,                13-CV-0186-BAH
Born Free, USA, Help Our Wolves Live,
and Friends of Animals And Their Environment,

            Plaintiffs,

    vs.

Sally Jewell, Secretary of the Interior,
United States Department of the Interior,
and United States Fish and Wildlife Service,

           Defendants.

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO PARTICIPATE AS AMICUS STATUS BY THE MINNESOTA DEPARTMENT OF NATURAL RESOURCES

## INTRODUCTION

Pursuant to the Federal Rules of Civil Procedure 5 and 7, the Minnesota Department of Natural Resources (hereinafter referred to as "MNDNR"), moves this Court for leave to participate in this matter case as *amicus curiae*. Removal of the gray wolf *(Canis lupus)* from the list of species protected by the federal Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., has shifted the management of the gray wolf population found within Minnesota to the State acting through MNDNR. Consequently, MNDNR has great interest in the outcome of this case as it will be impacted by the

ultimate determination of this Court. MNDNR should be granted *amicus* status in order to respond to Plaintiffs' allegations particular to the State of Minnesota by providing this Court with a thorough discussion of MNDNR's wolf management activities.

## BACKGROUND

The State of Minnesota holds ownership of all wild animals within its borders in its sovereign capacity for the benefit of it citizenry. *See* Minn. Stat. § 97A.025 (2012). MNDNR is the agency of the State that is charged by the Minnesota legislature to "do all things the commissioner [of MNDNR] determines are necessary to preserve, protect, and propagate desirable species of wild animals." Minn. Stat. § 97A.045, subd. 1 (2012). As a part of this charge, MNDNR has classified the gray wolf found in Minnesota as a "protected wild animal," meaning it is "protected by a restriction in the time or manner of taking ...." Minn. Stat. § 97A.015, subd. 39 (2012). As a protected wild animal, gray wolves may only be taken pursuant to the laws and rules for taking protected animals. This includes open seasons set forth in rule promulgated by MNDNR. Minn. Stat. § 97B.647, subd. 2 (2012); *see also* 37 SR 279-282 (Aug. 20, 2012) (promulgation of Minnesota's 2012-2013 wolf season rule, Minn. R. 6234.2105). Wolves may also be taken in certain limited circumstances in defense of human life and to protect livestock, domestic animals, and domestic pets, or as otherwise prescribed by statute, rule or permit. Minn. Stat. §§ 97A.401, 97B.645, subds. 3, 5, and 6, 97B.671, subd. 4 (2012).

MNDNR has been intimately involved in the study and management of the gray wolves found within the state before and since the species' original listing as protected

under the ESA in 1974. *See* 39 Fed. Reg. 1171-1176 (January 4, 1974). MNDNR has participated in gray wolf recovery planning and implementation with the United States Fish and Wildlife Service ("USFWS") for more than thirty-five years and continues to study and monitor the wolf population within the State. (*See* Declaration of Edward K. Boggess ("Boggess Decl.") at ¶¶6-8.) As is documented in literature and well known to the general public, Minnesota's wolf population has served as the foundation for wolf recovery efforts outside the Rocky Mountain region of the United States ever since the passage of the ESA. (*Id.* ¶ 6.) Since its listing, the population of gray wolves in Minnesota has burgeoned, with the population goal set by the USFWS-sponsored Recovery Plan for the gray wolf as it applies to Minnesota greatly exceeded and maintained for over two decades. (*Id.* ¶ 10.) Recent population estimates indicate that all of the areas in Minnesota that are likely to sustain wolves are currently occupied. (*Id.*)

In anticipation of the removal of the gray wolf from the list of species protected by the ESA, MNDNR developed a gray wolf management plan pursuant to legislative directive in the late-1990s. *See* Minn. Stat. § 97B.646 (2012). The resulting Minnesota Wolf Management Plan was completed in 2001, incorporating recommendations made to and later codified by the Minnesota Legislature. (Boggess Decl. ¶ 7; Minn. Stat. § 97B.645 (2012)). This plan includes regulatory mechanisms that are more than adequate, and were found to be so by the USFWS, to assure that recovery of the wolf in Minnesota will be maintained. *See* 76 Fed. Reg. 81,666, 81,701-705, 81,721-724 (Dec. 28, 2011).

The Minnesota Wolf Management Plan is not merely an unproven document, but rather has been implemented with success. On two prior occasions, the USFWS delisted the gray wolf in Minnesota and, during those periods, the gray wolf was under exclusive MNDNR management.    (Boggess Decl. ¶ 11.)    On both occasions, MNDNR's management plan was implemented without any detrimental impact on the continued viability of Minnesota's wolf population.  Since assuming management once again in January 2012, MNDNR has continued its program of close monitoring of the population, managing for depredation control, and successfully implementing the first regulated wolf hunting and trapping season in state history in the fall and winter of 2012-2013. (*Id.* ¶ 13.)  The hunting and trapping season was conducted in a conservative manner at a harvest level well below the estimated number of wolves that could be taken without having a negative impact on the population as a whole. (*Id.*)  The successful season was intensively regulated and monitored and, along with the implementation of other management objectives, has demonstrated the adequacy of the plan's terms and conditions. (*Id.*)

Fundamental to Plaintiffs' challenge to the delisting of the gray wolf in the Great Lakes Distinct Population Segment is their repeated allegations that the States of Minnesota, Wisconsin, and Michigan are incapable of managing their resident populations of wolves in a self-sustaining fashion.  To the contrary, the State of Minnesota, through its MNDNR, has invested extensive resources, including staff for research and monitoring, to assure the continued recovery and maintenance of a thriving

4

gray wolf population. MNDNR's recent conservative wolf hunting and trapping season reflects MNDNR's intention to achieve the objectives set forth in the Minnesota Wolf Management Plan to maintain a viable wolf population within the state while reducing conflicts between wolves and humans. MNDNR requests *amicus* status in order to inform this Court of its continuing efforts to implement the Minnesota Wolf Management Plan and the impact a ruling of this Court will have on these efforts.

## ARGUMENT

Although there is no Federal Rule of Civil Procedure governing participation by *amicus curiae*, the federal district courts have broad discretion to permit such participation where the appearance will be helpful to the court. *Waste Mgmt of Pa. Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995); *Mausolf v. Babbitt*, 158 F.R.D. 143, 148 (D. Minn. 1984), *rev'd on other grounds*, 85 F.3d 1295 (8th Cir. 1996). There are no formal prerequisites for qualifying as *amicus* and courts will often invite the participation of an *amicus* who will offer information that is both timely and useful, including information that enhances the court's understanding of the case as to the potential ramifications of its result. *Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982). The court's decision on *amicus* status is unique to the circumstances of the particular case before it and is guided by whether such participation "will assist the judge by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003).

The courts have found *amicus* participation to be advantageous for a number of reasons. For example, the District of Columbia federal district court has granted *amicus* status where "the non-party movants have a special interest in this litigation as well as a familiarity and knowledge of the issues raised that could aid in the resolution of this case." *Ellsworth Assocs. v. United States*, 917 F.Supp. 841, 846 (D. D.C. 1996); *see also Youming Jin v. Ministry of State Sec.*, 557 F.Supp. 131, 137 (D. D.C. 2008) ("An *amicus* brief should normally be allowed … when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide"). The New York federal district court held that *amicus curiae* submissions can offer insights not otherwise available from the parties to the action. *Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471 F. Supp. 2d 295, 311 (W.D.N.Y. 2007). The Louisiana federal district court found that no strict prerequisites must be established to qualify for an *amicus*, but rather the applicant needs only to make a showing that its participation would be useful to or otherwise be desirable by the court. *United States v. Davis*, 180 F. Supp. 2d 797, 800 (E.D. La. 2001) ("courts have exercised great liberality in permitting an *amicus curiae* to file a brief in a pending case"). In *Ossman v. Diana Corp.*, 825 F. Supp. 870, 873, n.13 (D. Minn. 1993), the Minnesota federal district court allowed an *amicus* memorandum to be filed in a shareholders' action against a number of corporations and corporate officers "[i]n the interest of compiling a comprehensive record on … the difficult issues before [the court]."

MNDNR's participation as an *amicus* here will more than fulfill the criteria set forth above.  As previously described, MNDNR has a significant interest in the outcome of the matter before this Court and has information that will aid in the Court's understanding of aspects of this case and the potential ramifications to the State of Minnesota resulting from any final order.  For example, Plaintiffs make numerous claims that the delisting of the gray wolf by the USFWS was not supported by the record because the states, Minnesota included, are unable to implement their state wolf management plans in a manner that assures the continued viability of the gray wolves located within their borders.  (*See* Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Pl. Compl.") at ¶¶ 2-3, 94, 99-111.)  Particular to Minnesota, Plaintiffs assert that MNDNR has "went back on its word" by removing from statute a five-year waiting period after delisting before implementing a wolf hunting and trapping season.  (*Id.* ¶ 103.) Plaintiffs also claim that Minnesota landowners have "enormous discretion to kill wolves."  (*Id.* ¶ 106.)  MNDNR can speak to these assertions and provide the Court with an accurate description of the Minnesota Wolf Management Plan and the agency's activities undertaken pursuant to the plan to date.

MNDNR's participation in this matter will also provide this Court with the benefit of MNDNR's thorough knowledge of the wolf population located within its borders and the agency's past, present, and future management of the species, as well as its knowledge of the USFWS's involvement in listing, and attempts at delisting, the species.  The present case involves the detail of MNDNR's participation in the planning for wolf

recovery, population estimates, process of delisting, and plans for future wolf management, among other issues.   Therefore, MNDNR can provide this Court with "insights, facts, or data" regarding these topics that neither Plaintiffs nor Defendants can provide the Court firsthand. *Voices for Choices*, 339 F.3d at 545.  Consequently, granting *amicus* status to MNDNR would allow this Court to compile "a comprehensive record on … the difficult issues before [the court]." *Ossman*, 825 F. Supp. at 873, n.13.

Last, no party will be prejudiced by MNDNR's participation in this matter as an *amicus curiae*.  Plaintiffs are well aware of the MNDNR's interest in the delisting of the gray wolf in Minnesota and specifically raised MNDNR's management as an issue in its suit. (Pl. Compl. ¶¶ 3, 99, 100, 103, 111.)  MNDNR asks the Court for permission to file its proposed Amicus Memorandum within seven days of service of Defendants' response to Plaintiffs' motion, which will allow MNDNR to avoid repeating arguments and references to the record already made by Defendants and will provide Plaintiffs adequate time to prepare any reply they deem warranted.  Consequently, no prejudice will befall the parties here by MNDNR's limited participation in this case as an *amicus curiae*.

## CONCLUSION

As demonstrated above, the subject matter of the present case is one of special and important interest to MNDNR.  Therefore, MNDNR respectfully requests that the Court grant this motion for *amicus curiae* status allowing it to address these issues of special significance.


Dated:  June 5, 2013.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota

s/**David P. Iverson**

David P. Iverson
Assistant Attorney General
Atty. Reg. No. 180944

445 Minnesota Street, Suite 1800
St. Paul, Minnesota 55101-2134
Telephone:  (651) 757-1466
Fax:  (651) 297-1235
dave.iverson@ag.state.mn.us

ATTORNEY FOR THE MINNESOTA
DEPARTMENT OF NATURAL
RESOURCES