**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The Humane Society of the United States<br>2100 L Street NW<br>Washington, DC  20037;<br><br>Born Free, USA<br>1122 S Street<br>Sacramento, CA  95811;<br><br>Help Our Wolves Live ("HOWL")<br>4901 Second Ave. South<br>Minneapolis, MN  55419;<br><br>Friends of Animals and Their Environment ("FATE")<br>3333 Alabama Ave.<br>St. Louis Park, MN  55415,<br><br>                    Plaintiffs,<br><br>          v.<br><br>Sally Jewell[1], Secretary of the Interior,<br>United States Department of the Interior<br>1849 C Street, NW<br>Washington, DC  20240;<br><br>United States Department of the Interior<br>1849 C Street, NW<br>Washington, DC  20240;<br><br>United States Fish and Wildlife Service<br>1849 C Street, NW<br>Washington, DC  20240,<br><br>                    Defendants. | Civil Action No. 13-00186<br><br><br>**DECLARATION OF**<br>**HOWARD GOLDMAN** |

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Sally Jewell, Secretary of Interior, is automatically substituted for her predecessor in office.

I, Howard Goldman, declare as follows:

1.  I am a resident of St. Paul, Minnesota. I am the Minnesota State Director for The Humane Society of the United States ("The HSUS"), a plaintiff in the above-captioned case. I have held this position since 2008. I have also been a member of The HSUS since the mid-1990s. I became a member of The HSUS because it was the most effective wildlife protection group in the country.

2.  The HSUS is a non-profit charitable organization incorporated in 1954. It is the largest animal protection organization in the world. The HSUS's mission is to promote the humane treatment of animals and to foster respect, understanding, and compassion for all creatures. Since its inception, The HSUS has been dedicated to protecting imperiled species and the habitats on which they depend. The HSUS accomplishes these objectives through public education, litigation, legislation, and research and investigations.

3.  The HSUS believes that the demise of any species is an irreparable loss that deprives the world of a unique creature and the role that creature plays in the ecosystem, and that this is especially true for an apex predator species like the gray wolf. The HSUS has been a long-standing advocate for gray wolf protection and recovery and has invested considerable organizational resources towards the protection of this species. For example, we regularly update the "Gray Wolf" segment of our website to keep our members and the public informed about arising hunting and other issues affecting this iconic species and our efforts and victories on behalf of the gray wolf and other animals. The HSUS also routinely submits comments on federal actions involving gray wolves, including delisting and management issues. We also use local activism, litigation, and other organizational and membership-based advocacy efforts to ensure that gray wolves are not delisted before a sufficiently robust recovery has been made. For instance, we challenged decisions of various federal agencies that had deleterious impacts on gray wolves, *see e.g.*, *Humane Society of the United States v. Kempthorne*, 481 F.Supp.2d 53 (D.D.C. 2006) (challenge to FWS's decision to issue permit to the State of Wisconsin to kill endangered gray wolves); *Voyagers Nat. Park Ass'n v. Norton*, 381 F.3d 759 (8th Cir. 2004)

(challenge to the National Park Service's decision to open national park to snowmobiling based, in part, on the effects on the gray wolf), and have intervened in lawsuits to defend regulations that sought to protect gray wolves. *See Mausolf v. Babbit*, 125 F.3d 661 (8th Cir. 1997) (intervened in lawsuit to defend restrictions on snowmobiling in a national park instituted due to the adverse impacts on endangered gray wolves). We also engaged in litigation to protect the gray wolf and ensure that federal Endangered Species Act protections are not prematurely or arbitrarily removed from gray wolves. In fact, we have been a party to nearly every case challenging the decision of the U.S. Fish and Wildlife Service ("FWS") to delist wolves in the Northern Rocky Mountain region, and were the lead-plaintiff in cases challenging the prior decisions to delist the wolf in the Western Great Lakes region, and were the only plaintiff group to be involved in both the Northern Rocky Mountain and Great Lake delisting challenges in 2007 and one of only two plaintiffs groups to be involved in both sets of challenges in 2009. *Defenders of Wildlife v. Hall*, F.Supp. (D. Mont. 2008); *Humane Society of the United States v. Kempthorne*, 579 F.Supp.2d 7 (D.D.C. 2008); *Defenders of Wildlife v. Sec'y, U.S. Dep't of Interior*, 354 F.Supp.2d 1156 (D.Or. 2005).

4. Each of these efforts were successful and restored federal Endangered Species Act protections for wolves. Following the success of our litigation and return of federal protections for wolves in 2009, the FWS received numerous petitions to delist wolves in the western Great Lakes region wolves, including petitions from the Minnesota Department of Natural Resources, the Wisconsin Department of Natural Resources, and the U.S. Sportsmen's Alliance, representing other hunting interests. The HSUS submitted comments on the FWS's 90-day finding on these petitions, and on its proposed rule to delist wolves in the Great Lakes. In its comment letter on the proposed delisting rule, The HSUS expressed strong opposition to the proposed delisting because, among other reasons, the FWS improperly designated the western Great Lakes distinct population segment ("DPS") for the sole purpose of delisting the DPS, that the boundaries of the DPS were much to wide, and because wolves remain threatened by inadequate regulatory mechanisms in Wisconsin, Minnesota, Michigan, and other states in which

the FWS proposed to delist the wolf.

5. My professional involvement with gray wolf issues began in the mid-1990's when the Minnesota Department of Natural Resources ("MDNR") improperly declared that the wolf population had recovered in Minnesota and that the agency was going to petition the FWS to remove the wolf from and the federal list of threatened and endangered species. I offered comments on behalf of Friends of Animals and Their Environment ("FATE") in opposition to this proposal to the MDNR expressing my belief that the MDNR's declaration of recovery was grossly premature, that the gray wolf still needed the protections of the ESA, and allowing the hunting of wolves for sport would be reckless and contrary to the conservation mandate of the agencies. Since then, I have been a strong advocate for the protection of wolves in the Great Lakes region. For example, in 1998, I was asked to participate on the MDNR's Wolf Roundtable as a representative of FATE, along with 30 other stakeholders, to develop a wolf management plan for the state. I also served on the Wisconsin Wolf Stakeholders Group – a group that advises the Wisconsin Department of Natural Resources ("WDNR") on wolf management and conservation in the state of Wisconsin – from 2010 to 2012 on behalf of The HSUS. In addition, I represented The HSUS at hearings in Ashland, Wisconsin and Grand Rapids, Minnesota on the FWS's most recent proposal to delist wolves in the Great Lakes. I also offered comments before the Wisconsin Natural Resources Board on behalf of The HSUS regarding the substance and implementation of the Wisconsin Wolf Management Plan in 2012 and 2013. These comments stated that The HSUS opposed federal delisting because, among other reasons, the wolf occupies only five percent of its historical range and thus is not recovered and because, once federal protections were removed, hostile state management plans would allow many of the same practices that nearly wiped out the wolf in the first place, such as widespread recreational hunting that would cause the population to decline significantly. These comments also stated that there was no biological or management reason to allow the hunting of wolves for sport, and that wolves, as an apex predator, play a very important role in the natural ecosystem, and should be treated as such by the WDNR, rather than as a predator that needed to be eliminated from the

landscape. I also testified before the Minnesota Senate and House Committees in 2012 and 2013 in opposition to legislation that would allow public wolf hunting and trapping seasons and allow the state to renege on its promise that it would not allow a public hunt for five years following federal delisting so that the state could instead focus on studying the species and how it reacted to the removal of federal protections – which the species had for over forty years. I also met with the MDNR Commissioner and Wisconsin Department of Natural Resources officials to express these same concerns. Additionally, I will be a speaker at the International Wolf Symposium in Duluth, Minnesota in October.

6. The HSUS and its members, including me individually, derive substantial benefits from the existence of wolves and have personal commitments to the recovery, fruitfulness and multiplication of the gray wolf and the protection of its habitat. Wolves have always been a symbol of the wilderness to me. They are highly intelligent and complex creatures with a unique family structure. Native Americans believe that the wolf is their brother and part of their creation story. Last year, I had the wonderful opportunity to participate in the Leech Lake Band of Ojibwe's celebration of the wolf at the Leech Lake Reservation. During this celebration, one of the tribal elders spoke about their creation story and the role of the wolf. He explained how original man walked the earth with the wolf and they became very close. They had to go separate paths, however the creator said that what happens to one will also happen to the other, which is the basis for their belief that the wolf is their brother, their friend. Also, the Chairman of the Red Lake Tribal Council sung a story about how a young member of the tribe was lost and alone in the wilderness in the winter, was protected by a wolf pack and returned by them to the Reservation. This was a very moving experience that I will remember for the rest of my life.

7. I have on several occasions visited and intend to continue to visit, forests, parks, and other wilderness areas in the State of Minnesota where gray wolf populations live. I enjoy many outdoor activities in these areas, including hiking, wildlife viewing, canoeing, and nature observation. For example, I have taken several trips to the Boundary Waters Canoe Area Wilderness in northeastern Minnesota. On each of these trips I canoed, portaged, hiked, camped

and observed many species of wildlife and signs of their presence, including wolf tracks. I consider it a great privilege to see wolves and am thrilled every time I see or hear a wolf, or see signs of wolf presence in the wild. I have also been to the International Wolf Center in Ely, Minnesota – an organization whose mission it is to advance the survival of wolf populations by teaching about wolves, their relationship to wild lands, and the human role in their future – several times to see their wolves. I plan to continue to take these trips in the future.

8. I am deeply disturbed by the knowledge that the FWS has stripped Endangered Species Act protections for wolves in the Great Lakes. I believe that the gray wolf is a majestic species and that each individual wolf deserves to remain protected on the endangered species list. Yet, because of the FWS's delisting decision, wolves do not have these protections and individual animals will be killed. I am especially disturbed by the use of inhumane traps that cause animals unnecessary pain and suffering, such as foothold traps with seven-inch jaws. The traps have no way to tell what animal is in their grasp and can kill non-target species. Even when these animals are released, they can die from their injuries. I worry that I may come across an injured and dying wolf or other animal while hiking or canoeing. I will try to plan my hiking trips around hunting and trapping seasons and try to avoid areas on which hunters might be or on which hidden traps might be set. My ability to enjoy these outings will be further harmed because I will be less likely to see wolves and signs of wolf presence, or to hear them howl.

9. Moreover, I am very concerned about the long term survival of the wolf in the Great Lakes. For example, the WDNR just set the kill quota for Wisconsin's next wolf hunting and trapping season at 275 wolves out of an estimated population of 820 wolves, or 33 percent of the population. This exceeds the 30 percent tipping point where science tells us the population could decline significantly. Further this is a significant increase over the quota of 201 wolves in 2012, particularly when the population has already declined from a high of 880 wolves. In addition, Minnesota has seen a decline of almost 25 percent of its wolf population over the past 5 years -- from 2,921 to 2,211. I believe that the killing of 413 wolves in Minnesota last year (which exceeded the MDNR's quota of 400 wolves), during the first hunt since delisting, has

contributed directly to the population loss. More troubling is that the low end of the population range is 1,652 wolves, perilously close to the minimum population of 1,600 established in the Minnesota Wolf Management Plan. Nevertheless, the MDNR has established a quota of 220 wolves for this coming season, beginning on November 9 of this year. These actions in Wisconsin and Minnesota present far too high a risk to the wolf population. Further, I believe that these actions will cause higher illegal kills including more gut shooting of wolves, which is very inhumane as it causes the animals to die slow deaths from bleeding out or from gangrenous infections, and a terrible waste of our natural resources. This is not just a hypothetical concern – gut shooting has been reported to me by hunters and by WDNR staff.

10.     I also worry that the death of hundreds of wolves under the recent hunting and trapping plans will decrease the ability of wolves to serve as a top predator which hurt my ability to enjoy the healthy eco-systems of the State of Minnesota. Moreover, I believe that wolves in the Western Great Lakes, as well as wolves outside the region, are further threatened by the expansive boundaries the FWS drew around the delisted population. The boundaries of the delisted population include the entirety of Minnesota, Wisconsin and Michigan, as well as parts of six other states (some of which do not even have wolf management plans), even though wolves are currently found only in parts of Minnesota, Wisconsin and Michigan. To get to areas where wolves remain protected, the animals have to travel hundreds of miles through states in which people have broad authority to kill wolves, which will hinder dispersal and further constrain true wolf recovery. There is suitable wolf habitat outside the Western Great Lakes region – habitat wolves once occupied before humans nearly wiped them out – that they could re-populate if given the chance.

11.     The benefits that I derive from the wolf as a species and from individual animals, as well the benefits derived by members of The HSUS, and those that we would derive, but for the FWS's failure to adequately protect the wolf, have been, are being, and will continue to be harmed, adversely affected and irreparably injured by the FWS's failure to comply with its statutory obligations to ensure the survival and recovery of the wolf. The delisting of the Great

- 8 -

Lakes wolf population has led, and will continue to lead, to the deaths of individual animals, disruption to and stress in intra-pack relationships, and a decline in the area wolf population. While I intend to continue my hiking, canoeing and other recreational activities, my experience will be dramatically diminished by the FWS actions. Accordingly, the FWS's violations of the Endangered Species Act will continue to deprive The HSUS, myself, and members of The HSUS of the recreational, scientific, spiritual, and aesthetic benefits of these species. These injuries are not compensable by money damages.

12. If the court finds that the rule delisting wolves in the Great Lakes is illegal, gray wolves in the region would once again be protected under the Endangered Species Act, which is vital to ensuring that my interests and the interests of The HSUS and its members in gray wolves are preserved and remain free from injury.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of September, 2013 at St. Paul, MN.

_____
Howard Goldman