## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

The Humane Society of the United States
2100 L Street NW
Washington, DC  20037;

Born Free, USA
1122 S Street
Sacramento, CA  95811;

Help Our Wolves Live ("HOWL")
4901 Second Ave. South
Minneapolis, MN  55419;

Friends of Animals and Their Environment ("FATE")
3333 Alabama Ave.
St. Louis Park, MN  55415,

        Plaintiffs,

    v.

Sally Jewell, Secretary of the Interior,
United States Department of the Interior
1849 C Street, NW
Washington, DC  20240;

United States Department of the Interior
1849 C Street, NW
Washington, DC  20240;

United States Fish and Wildlife Service
1849 C Street, NW
Washington, DC  20240,

        Defendants.

Civil Action No. 13-00186-BAH

**RESPONSE IN OPPOSITION TO THE ASSOCIATION OF FISH AND WILDLIFE AGENCIES' MOTION TO PARTICIPATE AS *AMICUS CURIAE***

## INTRODUCTION

Months after it had notice of this lawsuit, the Association of Fish and Wildlife Agencies

("AFWA") has requested leave to file as *amicus curiae* a brief in opposition to Plaintiffs' motion

for summary judgment in this action, which challenges the federal defendants' efforts to remove

Endangered Species Act ("ESA") protections from the endangered gray wolf in the Great Lakes

region.  AFWA Mot. to Participate as *Amicus Curiae*, Dec. 11, 2013, ECF No. 32 ("AFWA

Mot.").  AFWA's request to participate as *amicus* should be denied because AFWA does not

represent any new stake in the case, its interests are already adequately represented, and adding

any arguments by tangential groups at this stage in the litigation would add to the Court's

burden, and be prejudicial to Plaintiffs and an inefficient use of resources.  Therefore, Plaintiffs

request that the Court exercise its discretion to deny AFWA's motion to avoid AFWA's piling

on arguments already before the Court, creating unnecessary and costly delays in this time-

sensitive matter, and potentially confusing the issues before the Court.  At present, the federal

government, a group of private organizations, and three different state governments have filed

oppositions to Plaintiffs' motion for summary judgment, so that there are already *five* weighty

briefs before the Court in opposition to the one from Plaintiffs.  At some point, the unnecessary

addition of dispensable parties needs to stop, to conserve the Court's and the parties' resources.

This case has already reached that point.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

        Plaintiffs commenced this action on February 12, 2013 against the Secretary of the

Interior, the U.S. Department of the Interior, and the U.S. Fish and Wildlife Service ("FWS")

(collectively, "Federal Defendants") to challenge Federal Defendants' 2011 gray wolf delisting

rule that removed ESA protections from gray wolves in the Great Lakes region.  *See* 76 Fed.

Reg. 81,666 (Dec. 28, 2011) (the "2011 Delisting Rule"); Compl. for Declaratory and Injunctive

Relief, Feb. 12, 2013, ECF No. 1.

        According to the 2011 Delisting Rule, the core population of the western Great Lakes

DPS is in Minnesota, Wisconsin, and Michigan.  76 Fed. Reg. at 81,682.  As such, the

management plans and laws of each of those states will be the primary mechanisms with which

to control the degree of any gray wolf protection or extermination, now that federal ESA protections have been removed.  *See*, *e.g.*, 76 Fed. Reg. at 81,682 (rejecting request for a North Dakota state wolf management plan, explaining that the "core of the range for the western Great Lakes population of gray wolves is in Minnesota, Wisconsin, and Michigan. Wolf management plans are only needed for these three States for the Service to be assured that WGL wolves will be managed in such a manner that they are not likely to become an endangered species.").

Notably, Minnesota, Wisconsin, and Michigan, as well as their respective Departments of Natural Resources, are already represented in this action.  Approximately two months after the case was initiated, the Court granted the motions – *all* unopposed by Plaintiffs -- to intervene as defendants that were filed by the State of Wisconsin and the Wisconsin Department of Natural Resources (ECF No. 9), the State of Michigan and the Michigan Department of Natural Resources (ECF No. 10), and private parties representing hunting and gun interests including Safari Club International and the National Rifle Association of America (ECF No. 11) (collectively, "Intervenor-Defendants").  *See* Minute Orders granting Unopposed Motions to Intervene as Defendants (ECF Nos. 9-11), May 7, 2013.  In addition, on June 7, 2013, the Court granted the Minnesota Department of Natural Resources' motion (also unopposed by Plaintiffs) for leave to file an *amicus curiae*.  *See* ECF No. 20; Minute Order granting Unopposed Motion to Participate as Amicus Curiae by the Minnesota Department of Natural Resources, Jun. 7, 2013.  Therefore, the interests of those states and state agencies charged with managing the gray wolves who lost federal protections due to the 2011 Delisting Rule already are fully represented in the proceedings.

Immediately after granting Intervenor-Defendants' unopposed motions to intervene, the Court set the scheduling order, stating that the Intervenor-Defendants would file any summary

judgment motions after the Federal Defendants filed their summary judgment briefs "[i]n order to minimize duplication in arguments with the federal defendants."  Minute Order Imposing Scheduling Order, May 7, 2013.  The scheduling order also established page limitations such that Plaintiffs would file a single, combined response to the arguments of both the Federal Defendants and the Intervenor-Defendants.  *Id*.  The scheduling order was modified by the court's Minute Orders on July 11, 2013 and again on October 22, 2013.  However, the structure, sequencing, and page limitations of the parties' submissions have not changed from the Court's original schedule.  Guided by those parameters and expectations, Plaintiffs filed their motion for summary judgment on September 6, 2013, and four sets of briefs in opposition (and/or cross-moving for summary judgment) have been filed in the last week  Pls.' Mot. Summary J., Sept. 6, 2013, ECF No. 24; ECF No. 28 (federal defendants' opposition); ECF Nos. 29-31 (intervenor-defendants and amicus briefing).  And despite the procedural history of the case, and the obvious awareness by AFWA of the proceedings in this case (as three of its members are already either parties to this case or *amicus curiae*), it was only *after* Plaintiffs filed for summary judgment that AFWA first mentioned to counsel for the parties that it intended to move to participate as an *amicus curiae* in this action.

## II.    ARGUMENT

There is no right to participate as *amicus curiae*.  One may participate as *amicus curiae* only after obtaining leave of the court to do so.  "District courts have inherent authority to appoint or deny *amici* which is derived from Rule 29 of the Federal Rules of Appellate Procedure."  *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008) (quotation omitted).  An *amicus curiae* "does not represent the parties but participates only for the benefit of the Court."  *United States v. Microsoft Corp.*, No. 98–1232, 2002 WL 319366, at *2 (D.D.C.

Feb. 28, 2002).  Accordingly, it is solely within the Court's discretion to determine "the fact, extent, and manner" of participation by the proposed *amicus*.  *Id*.

Amicus participation may be appropriate when: (a) "a party is not represented competently or is not represented at all;" (b) "the *amicus* has an interest in some other case that may be affected by the decision in the present case;" or (c) "the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."  *Jin*, 557 F. Supp. 2d at 137 (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir.1997)).  Otherwise, leave to file an *amicus* brief should be denied. *Id*; *see also State of New York v. Microsoft Corp.*, 2002 WL 31628215, at *1 (D.D.C. Nov. 14, 2002) (denying four motions to participate as *amicus curiae* where none of the proposed *amici* addressed new issues of law but instead offered economic or technical information that was already adequately covered by counsel and witnesses for the parties).

None of the relevant circumstances exist here.  AFWA's interests are adequately represented already, AFWA does not offer unique information that would be helpful to the Court to resolve the disputed issues (which are purely legal in nature), and its brief is untimely and duplicative and would delay further and unduly burden the parties' briefing schedule.  Therefore, AFWA's motion for leave to file an *amicus curiae* brief should be denied.

### A.     AFWA's Interests in the 2011 Delisting Rule Are Adequately Represented.

As AFWA has stated, it represents the fish and wildlife agencies of all fifty states and the District of Columbia.  AFWA Mot. at 1 n.2.  This means, of course, that three of its members are already in this litigation and have already filed three separate briefs in this action.  Yet AFWA wishes to add yet another similar voice in order to repeat its position, virtually identical to that of the federal government and intervenors, "that the FWS delisting of the WGL DPS is consistent

with applicable law and with the protection of the gray wolf, and is an appropriate allocation of wildlife management responsibilities between the federal and state governments [and that] [t]he FWS decision correctly interprets and applies the ESA." AFWA Mot. at 3. AFWA is not promoting any position that is not already articulated by counsel in the oppositions and cross-motions filed by the Federal Defendants (Dec. 4, 2013, ECF No. 28) and the Intervenor-Defendants and amicus (Dec. 11, 2013, ECF Nos. 29-31), and therefore its request to enter the case, to repeat what has been said, should be denied.

AFWA also makes arguments that are outside of the scope of this case, attempting to enlarge the Court's review, on legal issues not raised by the parties. AFWA argues that under the ESA, "Congress intended . . . that the states would retain some wildlife management authority." AFWA Mot. at 5. AFWA also cites congressional testimony for its argument regarding the role of state management within the ESA framework. AFWA Mot. at 7-9. But this argument about the federal and state governments both having roles under the ESA completely misses the mark of what is at stake in the litigation, for Plaintiffs have never alleged that state agencies have no role in wildlife management or that FWS should not "work closely with the state governments" to meet the mandates of the ESA. AFWA Mot. at 7. Rather, Plaintiffs directly challenge the Federal Defendants' actions surrounding the 2011 Delisting Rule as being violations of the ESA, and the *specific* state plans at issue with respect to the WGL wolves. Further, AFWA's argument that the 2011 Delisting Rule "is an appropriate allocation of wildlife management between the federal and state governments" is an argument now made in four briefs before this Court; and it necessarily could only have merit for the three states already involved in the case, as those are the three states within the Western Great Lakes DPS where, according to

the 2011 Delisting Rule, the core wolf population exists, and the only states which were required to develop wolf management plans.  76 Fed. Reg. at 81,682.

Just as this case does not concern whether states have a role in carrying out the ESA, the case also does not concern state management of the gray wolf species throughout the United States; this case deals specifically with challenges to Federal Defendants' decision to strip protections from gray wolves in the Great Lakes region.[1]  The state fish and wildlife agencies of the three states in the Great Lakes region that are most directly affected by the 2011 Delisting Rule -- Minnesota, Wisconsin, and Michigan -- are already participating as Intervenor-Defendants or as *amicus curiae*.  And AFWA itself declares that "[its] state agency members are in the best position to assess the impact of a relisting of the WGL gray wolf on the fish and wildlife *within their borders*."  AFWA Mot. at 15 (emphasis added).  This underlines the fact that to the extent that the Court's ultimate conclusions of law regarding the 2011 Delisting Rule will have effects on some of AFWA's members, those effects will be felt principally by the AFWA member states where the Great Lakes gray wolves are present, and that those states' agencies have each filed substantial briefs on the issues.

The state agencies outside of the Great Lakes region do not have unique information or perspective on the 2011 Delisting Rule that could not be presented to the Court by the Federal Defendants, Intervenor-Defendants or existing *amicus curiae*.  AFWA's argument here merely echoes what the affected states have already submitted to the Court, *e.g.*, that Michigan, Wisconsin, and Minnesota have "authority and management plans to handle the continued management of the species."  AFWA Mot. at 12.  Yet AFWA plainly states this is why it seeks

---

[1] While the Federal Defendants' inconsistent conduct with respect to gray wolves across America may provide relevant evidence of the impropriety of the delisting at issue, the specific treatment of the wolves outside the Western Great Lakes is not before this Court.

*amicus* standing.  *See id.* (seeking "to file an *amicus* brief to forward its members' interest in managing the now-recovered wolf").  Therefore, AFWA's claims of a unique perspective are belied by its own assertions.

Moreover, while AFWA argues here that it has a particular concern and perspective for the Great Lakes gray wolf delisting, AFWA did not seek leave to participate as *amicus curiae* or as an intervenor-defendant in a separate challenge to federal efforts to delist gray wolves in the Rocky Mountains region.  *See Defenders of Wildlife et al v. Salazar et al.*, No. 9:09-cv-00077-DWM (D. Mont. filed Jun. 2, 2009); *Greater Yellowstone Coalition v. Salazar et al.*, No. 9:09-cv-00082-DWM (D. Mont. filed Jun. 9, 2009).  Just as AFWA did not have a unique interest in the Rocky Mountains regional delisting rule, likewise in this action AFWA does not have any unrepresented interest in or unique perspective on the 2011 Delisting Rule.[2]

In sum, the challenges that Plaintiffs have brought against Federal Defendants' 2011 Delisting Rule do not extend to all fifty states' wildlife agencies (and to the extent they could, three AFWA members already have a place at the bar here).  The central contested issues in this case are the Federal Defendants' determination that gray wolves are recovered across a significant portion of their range, Federal Defendants' use of the distinct population segment ("DPS") tool to delist gray wolves in the Great Lakes, and whether the Western Great Lakes

---

[2] By contrast, while AFWA cannot offer unique or different insights on the 2011 Delisting Rule for purposes of this litigation, there are ongoing federal actions affecting the gray wolf's ESA listing status on a nationwide basis, and AFWA's interest in national gray wolf listing issues may be appropriate there.  Specifically, on June 13, 2013, the U.S. Fish and Wildlife Service published a rule seeking to strip ESA protections from all gray wolves (*Canis lupus*) in the contiguous United States.  *See* Endangered and Threatened Wildlife and Plants; Removing the Gray Wolf (Canis lupus) From the List of Endangered and Threatened Wildlife and Maintaining Protections for the Mexican Wolf (Canis lupus baileyi) by Listing It as Endangered, 78 Fed. Reg. 35,664 (Jun. 13, 2013) (to be codified at 50 C.F.R. pt. 17).  That separate federal rulemaking process currently underway addresses the gray wolf delisting on a national level, and may be an appropriate venue for AFWA to present its members' collective views on nationwide action.

DPS satisfies the statutory criteria for delisting – a claim which turns in part on the state wolf management plans for Minnesota, Wisconsin, and Michigan.  *See* Pls.' Mot. Summary J. at 29-30, 40-42, ECF No. 24.  The other member agencies of AFWA cannot show an independent perspective or interest in the case that would be helpful to the Court in resolving Plaintiffs' claims, which are purely legal in nature.  Therefore, AFWA's motion should be denied.

**B.     Permitting AFWA's *Amicus* Brief Would Be Unduly Burdensome and Unfair**.

The parties and *amicus curiae* in this action have concurred on scheduling so that briefs and page limitations would be adequate to address all relevant issues to the Court without unnecessary repetition or piling on.  At this time, Plaintiffs have filed their opening brief and must file one consolidated reply to at least four separate briefs by the Federal Defendants, Intervenor-Defendants, and *amicus curiae*.  Allowing AFWA to file an *amicus* brief now would be unfair to Plaintiffs, who would have to devote at least a small section of their reply to any facts or issues alleged by AFWA.  As an ally of the Federal Defendants, Intervenor-Defendants, and the *amicus curiae* already present, AFWA's *amicus* brief would "in effect merely extend[ ] the length of the[defendants'] brief[s], [which would be] an abuse and should not be allowed." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 2008 WL 1994914, at *1 (N.D. Okla. May 5, 2008) (citing *Ryan v. Commodity Futures Trading Commission,* 125 F.3d 1062, 1063 (7th Cir.1997)) (denying leave to file by proposed *amici* who did not "have such unique information or perspective that can help the Court beyond the help that the lawyers for the parties and the three permitted amici" already provided).  The late timing of AFWA's motion weighs against granting leave for it to file its *amicus* brief.

More importantly, because AFWA's interests are represented already, any *amicus* filing would unnecessarily burden the Court and the parties with extraneous materials.  Because

AFWA does not offer unique information or perspective to help the Court decide the issues presented, an *amicus* brief by AFWA simply is not necessary or useful. Allowing AFWA to piggyback on the defendants' summary judgment arguments long after the parties had set page limitations for the briefing schedule would be unfair to Plaintiffs. Considerations of fairness counsel against granting AFWA's motion.

**C.     If AFWA Is Allowed to Participate, Its Participation Should Be Limited**.

If the Court determines that some participation by AFWA may be useful to the Court's assessment of the issues, AFWA's participation as *amicus curiae* should be limited. As it is "solely within the discretion of the Court to determine the fact, extent, and manner of participation by the amicus," the Court should exercise its discretion to restrict AFWA from repeating any arguments already presented by the Federal Defendants, the Intervenor-Defendants, or *amicus*. *United States v. Microsoft Corp.*, 2002 WL 319139, at *3 (D.D.C. Feb. 28, 2002) (citation omitted) (court determined a "limited amount of argument" from a proposed *amicus* might be helpful but conditioned the "limited role" by "strict parameters" governing the permissible contributions, including that *amicus* briefing would not be utilized to repeat any comments already made, since "such participation threatens to burden the Court with duplicative material and, more importantly, is unlikely to be of great assistance"). It seems impossible that AFWA could meet this test, given the representation by its members in the litigation.

AFWA should be restricted to materially assisting the Court in resolving specific legal issues presented, not advocating in favor of defendants' positions or defendants' views of the administrative record. *See United States v. State of Mich.*, 940 F.2d 143, 165 (6th Cir. 1991) ("The position of classical amicus in litigation was not to provide a highly partisan account of the facts, but rather to aid the court in resolving doubtful issues of law.") (citation omitted). And if

AFWA's motion is granted, AFWA's *amicus* brief should only be considered to the extent it complies with any directions from the Court to restrict its arguments to unique, non-duplicative legal perspectives on material issues necessary for the Court's ruling in this case.

## III.   CONCLUSION

With the Federal Defendants, two state intervenors, and one state amicus already, as well as the non-sovereign intervenors representing hunting interests, the Court has more than enough material to determine whether Federal Defendants acted arbitrarily and capriciously in issuing their 2011 Delisting Rule to remove ESA protections from the Great Lakes gray wolf.  The Court would not be aided by AFWA's voicing the concerns or perspectives of the state wildlife agencies in states that were not relevant to the 2011 Delisting Rule.  Any interests of AFWA in Great Lakes gray wolf listing decisions are adequately represented by the existing parties and *amicus* to the proceeding, and AFWA's *amicus* filing would be burdensome and counterproductive at this time that the parties have begun summary judgment briefing.  For these reasons, Plaintiffs respectfully request that the Court exercise its discretion to decline AFWA's motion for leave to file an *amicus curiae* brief.


Dated: December 12, 2013                By: */s/ Bruce A. Wagman*
                                        Bruce A. Wagman, Admitted *pro hac vice*
                                        bwagman@schiffhardin.com
                                        SCHIFF HARDIN LLP
                                        One Market, Spear Street Tower
                                        Thirty-Second Floor
                                        San Francisco, CA 94105
                                        (415) 901-8700
                                        (415) 901-8701 (facsimile)

                                        Ralph Henry, D.C. Bar No. 982586
                                        rhenry@humanesociety.org
                                        The Humane Society of the United States
                                        2100 L Street, NW

Washington, DC 20037
(202) 452-1100
(202) 778-6132 (facsimile)

*Attorneys for Plaintiffs The Humane Society of the United States; Born Free, USA; Help Our Wolves Live ("HOWL"); and Friends of Animals and Their Environments ("FATE")*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

*/s/Bruce A. Wagman*
Bruce A. Wagman, Admitted *pro hac vice*
Attorneys for Plaintiffs