**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THE HUMANE SOCIETY OF THE** | ) | |
| **UNITED STATES**, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 13-CV-00186-BAH |
| | ) | |
| **SALLY JEWELL**, *et al.*, | ) | |
| | ) | |
| Defendants. | | |

---

## THE ASSOCIATION OF FISH AND WILDLIFE AGENCIES' RESPONSE TO PLAINTIFFS' OPPOSITION TO ITS MOTION TO PARTICIPATE AS *AMICUS CURIAE*

The Association of Fish and Wildlife Agencies ("Association") respectfully submits its response to the Plaintiffs' reply in opposition to the Association's motion to participate in this case as *amicus curiae*.  Notwithstanding Plaintiffs' opposition, this Court should allow the Association to participate as *amicus curiae* in this case because the Association can provide the Court with information and argument useful for resolution of the issues in the case.

## INTRODUCTION

The Association's interest in this case is larger than that of its three state members directly affected by this Court's decision in this case.  Rather, the Association must represent a broader perspective, as representative of all of its members' interest, and that interest is in state management of wildlife.  While Plaintiffs are correct to point out that this case focuses on single species' status in three states, they ignore the potential gravity of this Court's decision and the larger national issues affected by the outcome of the case.  In fact, their Response does not touch on the Association's arguments to this effect.  Since the gray wolf has been and will probably continue to be the subject of litigation in states throughout its range, the decision in this case will

influence our national conservation efforts on behalf of the gray wolf, not just determine its status in these three states, as Plaintiffs assert.  At an even higher level, this Court's decision could affect states' ability to manage their wildlife resources, not just wolves.  It is because of these larger implications of the case – implications to which none of the current parties or *amici* has spoken – that the Association asks the Court for permission to participate as *amicus*.  The nature of the *amicus curiae* role is to provide unique perspective that helps a court resolve a case, and that is exactly what the Association offers to this Court.

Plaintiffs state three major objections to the Association's participation: that the Association does not represent any new stake in the case; that the Association's interests are adequately represented; and that the Association's participation will be burdensome and prejudicial to Plaintiffs.  Pls. Resp. in Opp'n to the Association of Fish and Wildlife Agencies' Mot. to Participate as *Amicus Curiae* 2, ECF No. 36 ("Pls. Resp.").  They also assert that the Association's filing was "untimely," and imply that the Association's participation is simply to provide partisan support for defendants.  *Id*. at 5, 10.  The Association will address each of these objections in turn and show why they are unwarranted.

## ARGUMENT

Plaintiffs do not dispute this Court's authority to grant *amicus curiae* status.  *See, e.g.*, *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003) *quoting United States v. Microsoft Corp.,* No. Civ. A. 98–1232, 2002 WL 319366 at *2 (D.D.C. 2002) ("it is solely within the discretion of the Court to determine the fact, extent, and manner of participation by the amicus").  Plaintiffs cite to this Court's opinion in *Jin v. Ministry of State Security* in which it held that an *amicus* brief "should normally be allowed when," among other things, "the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties

are able to provide." 557 F. Supp. 2d 131, 137 (D.D.C. 2008), *quoting Ryan v. Corporate Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997). The Association's brief provides such information through its inclusion of several arguments not offered by any party to the case, and its perspective is not represented by any current party or *amicus curiae*.

Further, as this Court considers whether or not to allow the Association's participation, it should note that only Plaintiffs oppose participation, and defendants have given their consent. When some parties oppose allowing an *amicus* to participate and others are in favor of allowing participation or are neutral, courts should consider these circumstances to be a neutral factor in the decision to allow participation. *See Wolfchild v. United States*, 62 Fed. Cl. 521, 537 (2004), *rev'd on other grounds*, 559 F.3d 1228 (Fed. Cir. 2009); *compare Fluor Corp. v. U.S.*, 35 Fed. Cl. 284, 285 (denying motion to participate as amicus curiae in part due to strong opposition from all parties). Thus, this Court should not consider Plaintiffs' opposition to the Association's participation as weighing against the Association's motion to participate in this action.

The Association, as representative of its members, does have a "new stake" in the case. As detailed in its Motion to Participate as *Amicus Curiae*, ECF No. 32, the Association represents the fish and wildlife conservation agencies of all fifty states and other U.S. jurisdictions. Michigan, Minnesota, and Wisconsin are only three of the Association's many members. Each of those states' briefs in this case focuses on the particular circumstances of wolf management in the respective states, including wolf recovery, wolf management plans, and wolf hunting. These are important points that this Court should take into consideration, and the Association's brief spends some time on these topics. However, the Association makes additional arguments that go beyond the scope of these individual states' wolf management. These arguments include an explanation of states' authority to manage wildlife and how delisting

is in keeping with that authority, that states stand to benefit from being allowed to manage wolves under the North American model of wildlife management, that allowing state management of wolves is beneficial to the wolf populations, and that relisting the wolf will unfairly burden these states by forcing them to serve as wolf nurseries which parallels the concerns the Endangered Species Act's ("ESA") drafters had about the robust Louisiana alligator populations burdening that state.

First, the Association points out the myriad authorities states have to manage their wildlife resources: "[p]rinciples of state authority to manage wildlife can be found in many places in U.S. law, including in constitutional law, in federal statutes such as the ESA, and in state constitutions and statutes.  Wildlife management has primarily been the province of the states, especially since the early twentieth century."  Amicus Brief 10, ECF No. 32-2.  In fact,

> [S]tate constitutions and statutes vest the states' property rights in wildlife, indicating that states hold wildlife for the benefit of the public, and give states the authority to manage their own wildlife.  Vacating the rule would once again withdraw state authority to manage wolves, which is rightly the states' prerogative under state law.

*Id.* at 12 (internal citations omitted).

The Association also argues that

> [S]tates will benefit from being allowed to manage their wolf populations in accordance with the [North American] Model, as they already do other native species.  This wildlife management model allows the state to determine, based on science and public input, the size of its wildlife populations and thus whether sustainable harvest is prudent.  If states determine that there is surplus wildlife, they can allow sustainable harvest of the surplus.  Opening the surplus for harvest generates many benefits for the state, its citizens, and for future conservation efforts[ ] [such as] allow[ing] for public buy-in and creat[ing] a sense of ownership of the wildlife . . . allocat[ing] the costs of supporting wildlife mainly to those who "use" it . . . through the sale of licenses and tags, [and creating an economic impact for states].

*Id.* at 14-15 (internal citations omitted).  Relisting would negate these benefits.

Third, the Association's brief explains how allowing state management of wolves, to include hunting, will benefit the wolf populations and further their recovery.

> Allowing [states] to continue to manage their wolf populations in accordance with [North American] Model-based conservation principles will also benefit the wolf populations and help sustain them in two key ways.  First, allowing regulated harvest of wolves should increase public tolerance toward wolves.  Second, allowing regulated harvest of wolves will decrease the frequency of and damage resulting from human-wolf interactions.

*Id*. at 17.  The brief goes on to explain states' incentives to manage wolves sustainably.

The Association's fourth and final argument explains how relisting will unfairly burden these states:

> To decide that FWS's definition of range should be more expansive and that the recovery designation must wait until wolf numbers grow will unfairly burden the WGL states.  It will in effect force the WGL states to serve as wolf nurseries, which will unfairly burden state resources and citizens, who would have to live with unwieldy and troublesome wolf populations.  When the Senate debated the ESA, the case of the American alligator came up frequently.  Some acknowledged that the alligator needed protection in some portions of its range such as in Florida, but worried that protecting it also in Louisiana would unduly burden that state, where alligator "harvesting was needed to keep alligators from overrunning the human population."  H.R. Rep. No. 412, 93rd Cong., 1 Sess. (1973). The solution, then, is to keep the wolf protected in states where suitable, but unoccupied, wolf habitat exists, but to allow for management and harvest in the WGL states where it has recovered.  FWS's designation of the WGL DPS accomplishes this goal, and it is consistent with the spirit of the ESA.

*Id*. at 25.  The Association seeks to call the Court's attention to these broader-scoped arguments that its three state members have not made.  Given its role as representative of state fish and wildlife conservation agencies, the Association has a "new stake in the case," and its arguments substantiate its stake.  The Association respectfully requests the opportunity to present its arguments to the Court.

The Association's views are not adequately represented by current parties to the case. The Association's duty is to represent the views of all of its members, not just the three subject

states.  While three of the Association's members are parties, their briefs focus on wolf

management in their respective states; as detailed above, the Association's brief offers different

arguments.  The Association's Motion to Participate as *Amicus Curiae* is the only opportunity for

its members, as a whole, to have a voice in this case.  This case is of national significance not

only as a potential precedent in the litigation over the status of the gray wolf in the United States,

but also in terms of states' authority to manage wildlife, federally protected or otherwise.

Plaintiffs argue that the Association did not request *amicus* status in other wolf cases, Pls. Resp.

8, ECF. No. 36, but the Association cannot seek participation in litigation until its members

request that it do so.  Here, recognizing the importance of this case, the Association's members

did request that it seek to participate.  And actually, the Association has participated in other

wolf cases, including previous litigation over the status of the gray wolf in the Western Great

Lakes states. *See Humane Society of the United States v. Kempthorne*, 579 F. Supp. 2d 7 (D.D.C.

Sept. 29, 2008). It also sought to participate in the Mexican Wolf litigation in New Mexico, but

did not have the capacity to do so.  *WildEarth Guardians v. Lane*, No. CIV 12-118 (D.N.M. Dec.

2, 2012).  The Association's participation in previous WGL wolf litigation is solid evidence of

its valid interest in participating here, and this Court should give it due consideration.

The Association's participation in other cases belies Plaintiffs' implication that the

Association is randomly participating in this case and that the Association has no unique interest

in it, and underscores the national importance of wolf litigation.  Because its perspective is

different than that of its three members who are parties to the case, and because participation as

*amicus curiae* is the only opportunity for its members' perspective as a whole to be brought to

the Court's attention, the Association respectfully requests that this Court allow it to participate.

Plaintiffs also complain that allowing the Association to participate as *amicus curiae* will be unfair to them. They base this on the "late" timing of the Association's notice to the existing parties that it would seek *amicus curiae* status. However, the Association's filing was timely according to the scheduling order. It also properly followed the procedure and timing for filing *amicus* briefs set forth in Fed. R. App. P. 29(b), which rule district courts also follow, as well as the local civil rules. *See Jin*, 557 F. Supp. 2d at 137. Characterizing the Association's filing as "untimely" is therefore inaccurate. To the extent that the timely filing of the Association's materials is unfair to plaintiffs, they may freely seek leave of court to add additional pages to their brief or even to amend the briefing schedule. Given Plaintiffs' assertions that the Association will not bring any new perspective to the case and that it will merely parrot Defendants' arguments, it is a wonder that Plaintiffs will feel the need to "devote at least a small section of their reply to any facts or issues alleged by" the Association. Pls. Resp. 9, ECF. No. 36. And even if this Court agrees with Plaintiffs that the Association's *amicus* submissions are unhelpful, this Court is free to disregard any such parts of the Association's *amicus* submission. *See Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 133 (3rd Cir. 2002). Nonetheless, the Association believes that this Court will not be confused by the issues the Association raises in its submission, and that the Court will find the Association's perspective helpful.

Lastly, Plaintiffs characterize the Association's position as partisan and argue that it is unfair to allow the Association to participate, as this will "merely extend [ ] the length of the [defendants'] brief[s]." Pls. Resp. 9, ECF No. 36. A proposed *amicus*'s agreement with an existing party on issues in a case is not reason to exclude the *amicus* from the case. In fact, Judge (and now Justice) Alito recognized in *Neonatology Assoc.* that "an amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend."

293 F.3d at 131.  He also opined that the idea of an impartial *amicus* "became outdated long ago."  *Id.* Under this standard, there is certainly a place for the Association at the bar here.  The Association is in support of delisting, as are Defendants and Intervening Defendants, and it offers its own arguments to this effect, most of which differ from Defendants' and Intervening Defendants' arguments.  The Association will provide a unique and valuable perspective to the Court in this case, including "background . . . that merit[s] judicial notice . . . [and] expla[nations of] the impact a potential holding might have."  *Id.* at 132, *quoting* Luther T. Munford, *When Does the Curiae Need An Amicus?,* 1 J. App. Prac. & Process 279, 281 (1999).  This Court should not give credence to the issue of the Association's partiality when it is deciding whether or not to allow the Association to participate.

## CONCLUSION

For these reasons and those articulated in its motion for leave to file, the Association respectfully requests that this Court accept its brief and consider it in the disposition of this case.

Dated: <u>December 17, 2013</u>

Respectfully submitted,

*/s/ <u>M. Carol Bambery</u>*
M. Carol Bambery
Michigan State Bar # 37915[1]
General Counsel
Association of Fish & Wildlife Agencies
444 N. Capitol Street, N.W., Suite 725
Washington, D.C. 20001
(202) 624-7890
Email: cbambery@fishwildlife.org


*/s/ <u>C. Parks Gilbert, III</u>*
C. Parks Gilbert, III
Alabama State Bar # 2067-C45G
c/o Association of Fish & Wildlife Agencies

---

[1] Member, Bar of the U.S. District Court for the District of Columbia

444 N. Capitol Street, N.W., Suite 725
Washington, D.C. 20001
(202) 624-7890
Email: parksgilbert@gmail.com


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF

system on all counsel of record.

/s/ *M. Carol Bambery*

M. Carol Bambery,
Attorney for the Association of Fish
& Wildlife Agencies