IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

───────────────────────────────

THE HUMANE SOCIETY
OF THE UNITED STATES
and BORN FREE, USA and
HELP OUR WOLVES LIVE (HOWL)
and FRIENDS OF ANIMALS AND
THEIR ENVIRONMENT (FATE),

       Plaintiffs

v

SALLY JEWELL,
SECRETARY OF THE INTERIOR and
UNITED STATES DEPARTMENT OF
THE INTERIOR and UNITED STATES
FISH AND WILDLIFE SERVICE,

       Defendants

and

STATE OF MICHIGAN and
MICHIGAN DEPARTMENT
OF NATURAL RESOURCES,

       Defendant Intervenors.

Civil Action No. 1:13-cv-00186-BAH

**STATE OF MICHIGAN AND
MICHIGAN DEPARTMENT OF
NATURAL RESOURCES'
REPLY IN SUPPORT OF
FEDERAL DEFENDANTS'
AND HUNTER CONSERVATION
COALITION'S MOTIONS FOR
SUMMARY JUDGMENT**

───────────────────────────────

## TABLE OF CONTENTS

Page

Table of Contents ............................................................................................................... i

Index of Authorities .......................................................................................................... ii

Argument ............................................................................................................................ 1

Conclusion and Relief Requested ...................................................................................... 5

Certificate of Service (e-file) ............................................................................................ 7

# INDEX OF AUTHORITIES

Page

**Cases**

*Colo. River Cutthroat Trout v. Salazar*,
   898 F. Supp. 2d 191 (D.D.C. 2012) ......................................................................... 3

*Defenders of Wildlife v. Kempthorne*,
   535 F. Supp. 2d 121 (D.D.C. 2008) ......................................................................... 3

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ............................................. 1

*Tucson Herpetological Soc'y v. Salazar*,
   566 F.3d 870 (9th Cir. 2009) .................................................................................... 3

**Statutes**

16 U.S.C. § 1533(a)(1) ..................................................................................................... 2

**Regulations**

76 Fed. Reg. 81,666 ......................................................................................................... 3

**STATE OF MICHIGAN AND MICHIGAN DEPARTMENT OF NATURAL
RESOURCES' REPLY IN SUPPORT OF FEDERAL DEFENDANTS' AND HUNTER
CONSERVATION COALITION'S MOTIONS FOR SUMMARY JUDGMENT**

Defendants the State of Michigan (State) and the Michigan Department of Natural

Resources (MDNR), through their attorneys, Bill Schuette, Attorney General for the State of

Michigan, and Pamela J. Stevenson and Stephen D. Thill, Assistant Attorneys General, hereby

reply in support of the motion for summary judgment filed by Defendants Sally Jewell, Secretary

of the Interior; the United States Department of the Interior; and the United States Fish and

Wildlife Service (collectively, Federal Defendants) (Doc. 27).  The State and MDNR also hereby

reply in support of the motion for summary judgment filed by the Hunter Conservation Coalition

(Doc. 33).

**ARGUMENT**

The State and MDNR are compelled to reply to Plaintiffs' Reply Memorandum (Doc.

41), in which Plaintiffs once again blatantly mischaracterize State wolf management efforts.

First, Plaintiffs audaciously claim that it is an "uncontested fact" that the States in the

Western Great Lakes (WGL) region "are already executing plans to *reduce* current wolf

populations in the region."[1]  Pls.' Reply Mem. (Doc. 41) at 9 of 61.  This simplistic assertion

---

[1] The State and MDNR recognize the well settled principle that judicial review of agency action
is normally confined to the administrative record that was before the agency at the time the
decision was made.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).
Despite this limitation on the scope of this Court's review, Plaintiffs attempt to support their
motion for summary judgment by reference to State management actions that fall outside the
administrative record, having occurred subsequent to promulgation of the December 28, 2011
Final Rule.  The State and MDNR are compelled to address matters outside the administrative
record in order to respond fully to Plaintiffs' assertions.

fails to address the scientific finding that, to reduce the long-term abundance of a wolf population, levels of human-caused mortality must exceed 29% of the wolf population in question.  (Exhibit 1 (Wildlife Conservation Order Amendment No. 14 of 2013) at 3.)  The target harvests for Michigan's 2013 public wolf harvest were designed to keep human-caused mortality well below 29% of Michigan's total wolf population.  In other words, the target harvests were designed to have no effect on overall wolf abundance in Michigan.  (Exhibit 1 at 3-4.)  MDNR expects the overall trajectory of Michigan's wolf population to remain unchanged despite the public harvest that was allowed in 2013.  (Exhibit 1 at 4.)

Next, Plaintiffs assert that the States in the WGL region "have indicated their intention to ignore long-time wolf survival in response to public pressure."  Pls.' Reply Mem. (Doc. 41) at 54 of 61.  This unsupported claim simply ignores the fact that one of the basic goals of the current Michigan Wolf Management Plan (2008 Plan) is to maintain a viable Michigan wolf population.  Administrative Record (AR) 007 at 000403A.  Plaintiffs' claim also ignores the fact that the 2008 Plan makes clear that public pressure will not be allowed to prevent the maintenance of a viable Michigan wolf population.  AR 007 at 000417A ("This plan does not identify a target population size, nor does it establish an upper limit for the number of wolves in the State.  As a result, public preferences regarding levels of positive and negative wolf-human interactions will strongly influence the extent to which wolf abundance and distribution *exceed* the minimum requirements for a viable population." (emphasis added)).

Plaintiffs also attempt to criticize the WGL States' management plans as "non-binding promises."  Pls.' Reply Mem. (Doc. 41) at 54 of 61.  Yet Plaintiffs fail to address precedent from

both the Ninth Circuit and this Court, holding that the United States Fish and Wildlife Service (FWS) may consider the benefits of protective measures contained in conservation agreements and management plans when determining whether a species is threatened or endangered under 16 U.S.C. § 1533(a)(1).  *Tucson Herpetological Soc'y v. Salazar*, 566 F.3d 870, 881 (9th Cir. 2009); *Colo. River Cutthroat Trout v. Salazar*, 898 F. Supp. 2d 191, 208 (D.D.C. 2012); *Defenders of Wildlife v. Kempthorne*, 535 F. Supp. 2d 121, 131-32 (D.D.C. 2008).  Moreover, although Plaintiffs have freely gone outside the administrative record in attempting to state their case, they still have not mustered a single shred of evidence—even from the period following promulgation of the December 28, 2011 Final Rule—to rebut the fact that the State and MDNR have rigorously adhered to the 2008 Plan since it was approved on July 10, 2008.  The State and MDNR have thoroughly demonstrated that they are dedicated to living up to the promises contained in the 2008 Plan, and there is no support for Plaintiffs' presumption that the State and MDNR would abandon those promises following Federal delisting.

Plaintiffs next make the disingenuous claim that "the States have made it clear how important it is to begin hunting wolves as soon as possible."  Pls.' Reply Mem. (Doc. 41) at 57 of 61.  The Final Rule took effect on January 27, 2012.  *See* Endangered and Threatened Wildlife and Plants; Revising the Listing of the Gray Wolf (Canis lupus) in the Western Great Lakes, 76 Fed. Reg. 81,666 (Dec. 28, 2011); AR 651 at 019731A.  There was no public wolf harvest in Michigan in 2012, and Michigan's 2013 public wolf harvest took place from November 15 through December 31,

2013—nearly two years after the Federal delisting.  (Exhibit 1 at 6, 11, 15.)  Contrary to Plaintiffs' claim, the State and MDNR did not establish a public wolf harvest "as soon as possible."  Rather, the State and MDNR took a conservative, measured approach and ensured that Michigan's first public wolf harvest following Federal delisting was in full compliance with the goals and commitments set forth in the 2008 Plan.

Plaintiffs specifically criticize the State and MDNR for having noted that the 2008 Plan, which FWS reviewed before promulgating the Final Rule, contemplated a public wolf harvest. Pls.' Reply Mem. (Doc. 41) at 57 of 61.  As demonstrated above, the provisions of the 2008 Plan concerning the possibility of a public harvest were not, as Plaintiffs would have it, an indication of "how important it is to begin hunting wolves as soon as possible."  The State and MDNR's purpose in noting that the 2008 Plan contemplated a public wolf harvest is to show that Michigan's 2013 public wolf harvest was not a deviation from the 2008 Plan.  In establishing the 2013 public wolf harvest, the State and MDNR did exactly what they had told FWS they would do in the event of a Federal delisting:  they developed and implemented a policy regarding public harvest of wolves that is socially and biologically responsible, and which does not threaten the long-term viability of the Michigan wolf population.  *See* AR 007 at 000457-60A.  (*See also* Exhibit 1.)

Plaintiffs also attack the State and MDNR for recognizing that the long-term viability of the wolf population largely depends upon social tolerance of wolves.  While Plaintiffs dub this an "inapt policy argument[ ]," Pls.' Reply Mem. (Doc. 41) at 58 of 61, the State and MDNR believe that it would be naïve and shortsighted to ignore the plain fact that negative public

perception is the primary historical reason for threats to the gray wolf population.  *See* AR 007 at 000420A.

Furthermore, Plaintiffs misapprehend the context and purpose of the State and MDNR's desire to minimize wolf-related conflicts.  The State and MDNR do not argue that the Final Rule was merely an appropriate response to public pressure, as Plaintiffs seem to suggest.  *See* Pls.' Reply Mem. (Doc. 41) at 58 of 61.  In defending the adequacy of State regulatory mechanisms pertaining to Michigan's gray wolf population, the State and MDNR have simply pointed out that minimizing wolf-related conflicts contributes to the maintenance of a viable wolf population by avoiding negative public perception of wolves.  Minimizing wolf-related conflicts is one of the basic goals of the 2008 Plan, and that goal must be read in conjunction with the first stated goal of the 2008 Plan:  to maintain a viable Michigan wolf population above a level that would warrant its classification as threatened or endangered.  AR 007 at 000403A.  The 2008 Plan's firm commitment to maintaining a viable Michigan wolf population remains in place regardless of Federal protections for the gray wolf, and regardless of public pressure.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, and for the reasons stated in the State and MDNR's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment and Concurring in Federal Defendants' Motion for Summary Judgment (Doc. 30), this Court should deny Plaintiffs' motion for summary judgment (Doc. 24) and grant the motions for

summary judgment filed by Federal Defendants (Doc. 27) and the Hunter Conservation Coalition

(Doc. 33).

Respectfully submitted,

Bill Schuette
Attorney General

/s/ Stephen D. Thill
Stephen D. Thill
(Mich. Bar No. P75808)
thills@michigan.gov
Pamela J. Stevenson
(Mich. Bar No. P40373)
stevensonp@michigan.gov
Assistant Attorneys General
Attorneys for State of Michigan and
Michigan Department of Natural Resources
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
Dated:  February 12, 2014                    (517) 373-7540

LF:  Humane Society v US Fish & Wild USDC-DC AG#2013-0032710-B/Reply - 2014-02-17

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on February 12, 2014, I electronically filed the above document(s)

with the Clerk of the Court using the ECF System, which will provide electronic copies to

counsel of record.

/s/ Stephen D. Thill
Stephen D. Thill
(Mich. Bar No. P75808)
thills@michigan.gov
Pamela J. Stevenson
(Mich. Bar No. P40373)
stevensonp@michigan.gov
Assistant Attorneys General
Attorneys for State of Michigan and
Michigan Department of Natural Resources
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909

Dated:  February 12, 2014                    (517) 373-7540

LF:  Humane Society v US Fish & Wild USDC-DC AG#2013-0032710-B/Reply - 2014-02-17

7