IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE UNITED
STATES, et al.,

      Plaintiffs,

v.

S.M.R. JEWELL, et al.,

      Defendant,

and

HUNTER CONSERVATION COALITION,

      Defendant-Intervenors.

Civil Action No. 13-00186 (BAH)

**HUNTER CONSERVATION COALITION'S REPLY MEMORANDUM
IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

In its opening brief ("HCC Br.," ECF No. 34), the Hunter Conservation Coalition

("HCC") presented extensive legal arguments in support of the U.S. Fish and Wildlife Service's

("FWS") decision to delist the Western Great Lakes ("WGL") gray wolves. Because Plaintiffs

did not respond to the vast majority of HCC's arguments,[1] HCC has significantly limited the

length of its reply. Accordingly, HCC respectfully asks the Court to carefully consider and

review the arguments in its opening brief.

HCC's opening brief presented arguments that, in its Rule Revising the Listing of the

Gray Wolf (Canis lupus) in the Western Great Lakes, 76 Fed. Reg. 81666 (Dec. 28, 2011)

---

[1] HCC is not responding to Plaintiffs' mention of HCC's arguments against Plaintiffs' standing, as HCC submitted those fact-dependent arguments as part of its Opposition Brief to Plaintiffs' Motion for Summary Judgment, and not as part of HCC's Cross-Motion for Summary Judgment. As a result, HCC is constrained from further addressing standing in this Reply.

("Delisting Rule"), the FWS properly construed and applied the Distinct Population Segment ("DPS") provision of the Endangered Species Act ("ESA") when it recognized a DPS for the purposes of delisting.[2] HCC made substantial points regarding the "significant portion of range" provision of the ESA, particularly the fact that both occupied (current) and unoccupied (historic) methods for applying the significant portion of range analysis reach the same results under the facts of this case.[3] HCC provided the Court with extensive record citations to show that the delisting decision was not based on political interference, but was the product of proper agency deliberation and rulemaking.[4] HCC supplied ample evidence from the administrative record to demonstrate that the FWS's decision not to designate *canis lycaon* as a separate species from *canis lupus* in the WGL states was correct.[5] Plaintiff simply chose not to respond to the vast majority of HCC's arguments on reply.

HCC does wish to bring to the Court's attention one development that has occurred since HCC filed its brief on December 11, 2013. On February 10, 2014, the FWS announced a reopening of the comment period for its June 13, 2013, proposed rule Removing the Gray Wolf (Canis lupus) From the List of Endangered and Threatened Wildlife, which pertains to non-WGL wolves.[6] Plaintiffs' opening brief argued that, in the June 13, 2013 proposed rule, the FWS suggested that two species of wolves inhabit the WGL States.[7] In the Delisting Rule, issued on December 28, 2011, the FWS had concluded that there was only one recognized wolf species in the WGL states. In its December 11, 2013 Reply Memorandum, HCC pointed out that Plaintiffs were improperly attempting to rely on extra-record post-decisional evidence in the form of

---

[2] HCC Br. 4-14.
[3] HCC Br. 4-6.
[4] HCC Br. 21-27.
[5] HCC Br. 14-21.
[6] 79 Fed. Reg. 7627 (Feb. 10, 2014).
[7] Pls.' Mem. in Supp. of Pls.' Mot. for Summ. J. at 34-35 (ECF Doc. 24-1).

tentative agency conclusions in a proposed rule that might be withdrawn.[8]  With the February 10,

2014 reopening of that proposed rule, the FWS gave credence to HCC's argument that this Court

should not rely on post-decisional proposed rulemaking to determine the legality of the FWS's

final 2011 Delisting Rule for the WGL wolves.  The FWS announced the reopening of the

comment period on its June 13, 2013 proposed rule regarding non-WGL wolves due to the

release of an FWS-sponsored independent scientific peer review that was highly critical of the

Chambers/Fain article that FWS heavily relied on in that proposed rule.[9]  This was the very

article that advocated the "two species" in the WGL theory upon which Plaintiffs rely for their

challenge to the delisting of the WGL wolves.  The repeated twists and turns in the fast-evolving

world of wolf genetics demonstrates the practical necessity of limiting the scope of judicial

review to the record before the agency at the time it issued the 2011 WGL delisting rule being

reviewed.[10]

The single section of HCC's brief to which Plaintiffs did extensively respond was HCC's

argument that the FWS's consideration of social tolerance benefits in the long-term conservation

of post-delisted WGL wolves further demonstrates that the Delisting Rule was not arbitrary and

capricious.  Plaintiffs incorrectly argued that (1) recent cases concerning the listing of polar bears

have significance for social tolerance and species conservation; (2) social tolerance is unlikely to

---

[8] HCC Br. 20-21.

[9] 79 Fed. Reg. 7627 (Feb. 10, 2014), noting availability of NAT'L CTR. FOR ECOLOGICAL ANALYSIS & SYNTHESIS, REVIEW OF PROPOSED RULE REGARDING STATUS OF THE WOLF UNDER THE ENDANGERED SPECIES ACT, (Jan. 2014), at http://www.fws.gov/home/wolfrecovery/pdf/Final_Review_of_Proposed_rule_regarding_wolves2014.pdf

[10] The organizations of the HCC Defendant-Intervenor groups wish to clarify that, in this brief, they are not taking a position on the delisting of Lower 48 wolves, as proposed by the June 13, 2013 rule, (although some of the individual organizations that are part of the HCC group have independently done so through the comment process). For the purpose of this briefing, HCC members simply agree with peer reviewers of the June 13, 2013 proposed rule that the Chambers/Fain article upon which the FWS relied for the dual species classification is not sound science.

have any impact on human-caused wolf mortality; and (3) *Humane Society of the United States*

*v. Kempthorne*[11] has precedential value or applicability to the issues of this case.

First, Plaintiffs inappropriately rely on the rulings from *In re Polar Bear Endangered*

*Species Act Listing and § 4(d) Rule Litigation*,[12] which involved a challenge to the FWS's

decision to list the polar bear.  While the District Court did not address the issue of social

tolerance, it did acknowledge the FWS's obligation under the ESA "to consider how foreign

[and/or State] conservation efforts might impact the decision to list a particular species as

threatened or endangered" and noted that those conservation efforts included "polar bear sport

hunting programs."[13]  Contrary to Plaintiffs' suggestions,[14] the District Court did not find that the

conservation benefits of sport hunting failed to offset any potential harm resulting from human-

caused mortality.  To the contrary, the Court determined that such conservation efforts "may

have been ***sufficient to protect the species from overharvest*** and disturbance . . ."[15]

Plaintiffs also ignore the scientific data considered and cited by the FWS in the Delisting

Rule and highlighted by HCC that demonstrates that social tolerance resulting from an increased

role in the management of wolves can lead to a reduction in illegal take.[16]  For example, both the

FWS and HCC cited research demonstrating how the farming and ranching communities'

frustration with the FWS's repeated unsuccessful attempts to delist the WGL gray wolves

contributed to an increase in illegal take of wolves.[17]  The Delisting Rule also noted the potential

---

[11] 481 F. Supp. 2d 53 (D.D.C. 2006), *vacated*, 527 F.3d 181 (D.C. Cir. 2008).
[12] 794 F. Supp. 2d 65 (D.D.C. 2011) and 709 F.3d. 1, 17 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 310 (2013).
[13] 794 F. Supp. 2d at 103.
[14] Pls.' Reply Mem. at 51.
[15] *Id*. at 104 (emphasis added).  The Court also concluded that the benefits of sport hunting could not offset risks from climate-related losses of sea ice habitat.  It was this determination that the Circuit Court affirmed.  709 F.3d. 1, 17 (D.C. Cir. 2013).
[16] *See* HCC Br. 31-36.
[17] 76 Fed. Reg. 81666, 81719-20 (Dec. 28, 2011); HCC Br. 34.

for reducing illegal take through regulated hunting.[18]  Such research demonstrates that human-caused mortality in the form of illegal take is likely to decline where hunter participation in wolf management increases social tolerance for the predator.

Finally, *Humane Society of the United States v. Kempthorne* has no precedential impact or applicability to the issues before this Court.[19]  That case questioned the legality of using lethal removal permits for managing an *endangered* species, not the use of regulated hunting for the ongoing management and conservation of a recovered species removed from the endangered species list.[20]  Although Plaintiffs would prefer that wolves can never be hunted, regardless of listing status, that is not the ESA's purpose, nor is it the most beneficial approach to long-term wolf conservation.  Plaintiffs' selective excerpt from a quotation describing the tenets of the North American Model of Wildlife Conservation fails to include the essential language about wildlife species "that they should be managed using the best science available."[21]  It is through hunter participation in the long-term management and conservation of wolves that the species will remain without need of federal protection.

For the foregoing reasons and those set forth in HCC's opening brief, the 2011 WGL Delisting Rule was not arbitrary and capricious and should be affirmed, and Federal Defendant's and Defendant-Intervenors' Cross-Motions for Summary Judgment should be granted.

---

[18] "It is also possible that illegal killing of wolves in Minnesota will decrease, because the expanded options for legal control of problem wolves may lead to an increase in public tolerance for wolves (Paul in lit. 2006, p. 5)."  76 Fed. Reg. at 81704.

[19] HCC Br, 32 n. 39.

[20] 481 F. Supp. 2d 53 (D.D.C. 2006), *vacated* 527 F.3d 181 (D.C. Cir. 2008).

[21] AR 630 at 017763A.

Dated:  February 12, 2014

Respectfully Submitted,


/s/ Anna M. Seidman

Anna M. Seidman
D.C. Bar # 417091
Douglas S. Burdin
D.C. Bar # 434107
Safari Club International
501 2nd Street N.E.
Washington, D. C. 20002
Telephone: (202) 543-8733
Facsimile: (202) 543-1205
aseidman@safariclub.org
*Attorneys for Defendant-Intervenor*
*Safari Club International*


Christopher A. Conte
D.C. Bar # 430480
NRA/ILA
11250 Waples Mill Rd., 5N
Fairfax, VA 22030
Telephone: (703) 267-1166
cconte@nrahq.org
*Attorneys for Defendant-Intervenor*
*National Rifle Association of America*


John I. Kittel
U.S.D.C. for D.C. Bar No. WI0030
Mazur & Kittel, PLLC
30665 Northwestern Hwy. Ste. 175
Farmington Hills, MI  48334
Tel: (248) 432-8000
Fax (248) 432-8010
jkittel@mazur-kittel.com
*Co-Counsel for Defendant-Intervenor Michigan*
*Conservation Clubs and Rocky Mountain Elk Foundation*


/s/ James H. Lister

James H. Lister
D.C. Bar # 447878
William P. Horn
D.C. Bar # 375666
Carissa D. Siebeneck
D.C. Bar # 1007526
Birch Horton Bittner and Cherot, PC
1156 15th Street, N.W.
Suite 1020
Washington, D.C.  20005
Telephone: (202) 659-5800
Facsimile (202) 659-1027
whorn@dc.bhb.com
jlister@dc.bhb.com
csiebeneck@dc.bhb.com
*Attorneys for Defendant-Intervenors:*
*U.S. Sportsmen's Alliance Foundation;*
*Wisconsin Bear Hunters Association;*
*Michigan United Conservation Clubs;*
*Wisconsin Bowhunters Association;*
*Upper Peninsula Bear Houndsmen*
*Association; Michigan Hunting Dog*
*Federation; and Rocky Mountain Elk*
*Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system of all counsel of record.

/s/ James H. Lister
James H. Lister
*Attorneys for Defendant-Intervenors:  U.S. Sportsmen's Alliance Foundation; Wisconsin Bear Hunters Association; Michigan United Conservation Clubs; Wisconsin Bowhunters Association; Upper Peninsula Bear Houndsmen Association; Michigan Hunting Dog Federation; and Rocky Mountain Elk Foundation*