**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **The Humane Society of the United States, et al.**<br><br>    **Plaintiffs,**<br>  v.<br><br>**Sally Jewell, Secretary of the Interior, et al.**<br><br>    **Defendants,**<br>  and<br><br>**State of Wisconsin, et al.**<br><br>    **Intervenor-Defendants.** | **Civil Action No. 13-00186-BAH**<br><br>**PLAINTIFFS' RESPONSE TO MINUTE ORDER AS TO REMEDIES BRIEFING** |

   Pursuant to the Court's September 19, 2014 Minute Order, Plaintiffs hereby advise the Court of their view on whether a ruling on the merits of Plaintiffs' legal claims against the U.S. Fish and Wildlife Service ("FWS" or "Service") should be bifurcated from any ruling on potential remedies, if Plaintiffs' claims are found to be meritorious.

   No further briefing on remedies would be necessary or useful if Plaintiffs succeed on any claim. In every reported Endangered Species Act (ESA) case where an agency rulemaking to delist or downlist a species from protections under the ESA has been overturned by a court, vacatur was ordered. This makes perfect sense, as the overriding purpose of the ESA – to provide the highest level of protection for imperiled species – would be thwarted if an unlawfully issued delisting rule were allowed to stay in effect, thus allowing the killing and injuring of a species that should have remained protected.

   Accordingly, in every one of the seven previous cases finding that a FWS rulemaking to reduce or eliminate ESA protections for gray wolves has been overturned by a court, the unlawful

- 1 -

agency action was vacated.[1]  Indeed, just last week this Court overturned and vacated the FWS's September 2012 rule delisting wolves in Wyoming.  *Defenders of Wildlife v. Jewell*, 2014 WL 4714847, *19.  (Subsequent to that ruling, the Court denied motions for reconsideration as to the remedy imposed.  *See* September 30, 2014 Minute Order in D.D.C. Civ. No. 12-1965).  A different result is not warranted here.  If any of Plaintiffs' claims are deemed to have merit by the Court, the Service would be obligated to engage in a new de-listing analysis that is consistent with the ESA, without any presumption that the Service would again choose to delist Great Lakes wolves at the end of that process.  As with the prior wolf delisting cases, vacatur would simply restore the *status quo* of federal protection that existed prior to the December 2011 rule.

Even aside from the unique posture of ESA de-listing cases – where vacatur has always been deemed the appropriate remedy – setting aside the agency's unlawful action is the statutory remedy provided for by the APA itself.  The plain language of the APA instructs that courts "*shall . . . hold unlawful and set aside*" agency actions that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(1) (emphasis added); *see also Bennett v. Spear*, 520 U.S. 154, 175 (1997) (a statute is not "discretionary" where it "uses the

---

[1] *See Defenders of Wildlife v. Jewell*, -- F.Supp.3d --, 2014 WL 4714847, *19 (D.D.C., J. Jackson, September 23, 2014) (vacating FWS's September 2012 Wyoming de-listing rule); *Defenders of Wildlife v. Salazar*, 729 F. Supp. 2d 1207, 1228 (D. Mont. 2010) (vacating FWS's April 2009 Northern Rockies de-listing rule applicable only to populations found in Montana and Idaho, *and specifically denying a request for supplemental briefing on remedies*, finding that there was no reason why the issue could not have been addressed in the parties' principal briefs on the motions for summary judgment, and no evidence that further briefing was necessary); *Humane Soc'y of the United States v. Kempthorne*, Stipulated Settlement Agreement and Order, Civ. No. 09-01092-PLF, Dkt. 27 (D.D.C., J. Friedman, July 2, 2009) (vacating FWS's April 2009 Great Lakes de-listing rule after FWS "concede[d] that they erred" in violation of the APA); *Defenders of Wildlife, et al. v. Hall, et al.*, Order, CV 08-56-M-DWM, Dkt. 112 (D. Mont., J. Molloy, October 14, 2008) (vacating FWS's February 2008 Northern Rocky Mountains de-listing rule at the request of the FWS after issuance of a preliminary injunction in the case, *see* 565 F.Supp.2d 1160 (D. Mont. 2008)); *Humane Soc'y of the United States v. Kempthorne*, 579 F. Supp. 2d at 21 (2008) (vacating FWS's February 2007 Great Lakes de-listing rule); *National Wildlife Fed'n v. Norton*, 386 F. Supp. 2d 553, 569 (D. Vt. 2005) (vacating FWS's April 2003 rule down-listing gray wolves from endangered to threatened status); *Defenders of Wildlife v. Secretary, U.S. Dep't of Interior*, 354 F. Supp. 2d 1156, 1174 (D. Or. 2005) (also vacating FWS's April 2003 rule).

imperative 'shall'").  Indeed, the Supreme Court has long recognized that the presumptive remedy in an APA case is vacatur.  *See*, *e.g.*, *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (when the agency's action cannot be sustained "then the [agency's] decision must be vacated and the matter remanded to [the agency] for further consideration"); *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) ("The Administrative Procedure Act requires federal courts to set aside federal agency action that is 'not in accordance with law,' 5 U.S.C. § 706(2)(A) – which means, of course, any law, and not merely those laws that the agency itself is charged with administering.").

While remand without vacatur is sometimes an available remedy in APA cases where an agency simply failed to observe necessary procedure, or to provide a sufficient explanation of its reasoning, none of Plaintiffs' claims here fall within that narrow exception to the APA's presumption of vacatur.  *See*, *e.g.*, *Heartland Regional Medical Center v. Sebelius,* 566 F.3d 193, 198 (D.C. Cir. 2009) (noting that remand without vacatur is warranted "[w]hen an agency may be able readily to cure a defect in its explanation of a decision"); *United Mine Workers of America v. Federal Mine Safety & Health Administration,* 920 F.2d 960, 966 (D.C. Cir. 1990) (agency decision remanded without vacatur because "the record affords [the Court] no basis for concluding that the deficiencies of the order will prove substantively fatal").  In this case, Plaintiffs' Complaint seeks relief from substantive, rather than purely procedural or prophylactic, violations of the ESA.

The Complaint seeks "[a]n order vacating the 2011 Delisting Rule and reinstating the FWS' prior rule affording ESA protections for gray wolves in the Great Lakes region."[2]  Plf. Cmplt. (Dkt. 1) at 36-37.  In support of this relief, Plaintiffs allege that the Service: (I) violated the ESA and the Service's own Distinct Population Segment (DPS) policy when it simultaneously designated and delisted the Great Lakes DPS; (II) failed to fully and properly apply the ESA's statutory criteria for listing and de-listing actions; and (III) improperly relied on the Eastern Timber

---

[2] The only other relief Plaintiffs requested in this litigation was a declaratory judgment, and an award of attorneys' fees and costs.  Plaintiffs have not sought any non-statutory relief invoking the Court's jurisdiction in equity—such as a permanent injunction prohibiting additional regulatory efforts to de-list wolves—that would require the Court to balance the equities in deciding a remedy.

Wolf Recovery Plan and Chambers study when the best available science does not support any of the taxonomic conclusions that the Service relied on after completely flipping its approach to taxonomic classification of gray wolves between its draft and final rules, *see* Plf. Cmplt. (Dkt. 1) at 31-36.  Each of these claims is substantive in nature, and success on any of these claims would undermine the agency's entire de-listing decision.  As a result, the FWS would be obligated to reconsider (and not simply provide for additional procedures, or further explain) its decision on remand, and the outcome of that reconsideration cannot be presumed to be de-listing.  Each of Plaintiffs' claims is offered in support of the only appropriate remedy for an unlawful de-listing rule — vacatur and restoration of the *status quo* of federal protection for the species at issue.

This is entirely consistent with this Court's most recent opinions on wolf de-listing.  By example, in its September 29, 2008 memorandum opinion concluding that the Service's February 2007 Great Lakes wolves delisting rule was unlawful, this Court determined that vacatur was appropriate because the Service's failure to explain how its decision to designate a DPS of wolves for the purpose of de-listing it was consistent with the ESA was "fundamental" to the de-listing process, and "the Court cannot be sure that the agency will arrive at the same conclusion after further consideration."  *Humane Soc'y of the United States v. Kempthorne*, 579 F. Supp. 2d 7, 21 (D.D.C. 2008).  The Court also stated that vacatur was appropriate because it would simply result in reversion to the *status quo* of federal management of wolves in existence prior to issuance of the de-listing rule, and "[l]ittle confusion or inefficiency will result from reinstating a regulatory regime that was in place from 1978 to 2007, particularly given the fact that state and federal wolf management authorities have been working in tandem for years." *Id*.

As the Court noted in its recent Minute Order in the instant matter, only the intervenor Hunter Conservation Coalition's brief suggested that the parties should be given "the opportunity to submit a supplemental brief on remedy" if Plaintiffs are successful on the merits.  Def.-Int. HCC Summ. J. Br. (Dkt. 34) at 42.  In both their opening and reply briefs in support of their motion for summary judgment, Plaintiffs explained that vacatur is the only appropriate remedy.  Plf. Summ. J.

- 5 -

Br. (Dkt. 24-1) at 44; Plf. Opp./Reply Summ. J. Br. (Dkt. 40) at 52.  No party has been denied an opportunity to brief this issue, and Plaintiffs submit that no further briefing is necessary.[3]

| | |
|---|---|
| Dated:  October 3, 2014 | By:    */s/ Bruce A. Wagman*<br>Bruce A. Wagman, Admitted *pro hac vice*<br>bwagman@schiffhardin.com<br>SCHIFF HARDIN LLP<br>One Market, Spear Street Tower<br>Thirty-Second Floor<br>San Francisco, CA  94105<br>(415) 901-8700<br>(415) 901-8701 (facsimile)<br><br>Ralph Henry, D.C. Bar No. 982586<br>rhenry@humanesociety.org<br>The Humane Society of the United States<br>2100 L Street, NW<br>Washington, DC  20037<br>(202) 452-1100<br>(202) 778-6132 (facsimile)<br><br>*Attorneys for Plaintiffs The Humane Society of the United States; Born Free, USA; Help Our Wolves Live ("HOWL"); and Friends of Animals and Their Environments ("FATE")* |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

   */s/Bruce A. Wagman*
Bruce A. Wagman, Admitted *pro hac vice*
*Attorney for Plaintiffs*

35026-0010
SF\321211842.1

---

[3] If the Court would nevertheless prefer additional briefing on this matter, Plaintiffs request that it be done on an expedited basis, as wolves are already being trapped and killed in the Great Lakes region pursuant to the de-listing rule at issue in this case.